## ST. LOUIS, IRON MOUNTAIN & SOUTHERN RAIL-WAY COMPANY *v.* STARBIRD, ADMINISTRA-TOR OF MILLER.

## STARBIRD, ADMINISTRATOR OF MILLER, *v.* ST. LOUIS, IRON MOUNTAIN & SOUTHERN RAIL-WAY COMPANY.

ERROR TO THE SUPREME COURT OF THE STATE OF ARKANSAS.

Nos. 275, 796. Argued December 5, 6, 1916.—Decided April 30, 1917.

Section 237 of the Judicial Code is in effect but a reënactment of § 25 of the Judiciary Act of September 24, 1789, and § 709 of the Revised Statutes.

In an action against an initial carrier for damage caused by its neg-ligence and negligence of connecting carriers to goods of the plain-tiff shipped in interstate commerce on a through bill of lading, the rights and liabilities of the parties are governed by the Carmack Amendment (§ 20 of the Act of June 29, 1906, c. 3591, 34 Stat. 584); and claims of the carrier that failure to give notice as required by the bill of lading relieved it from liability, and of the shipper that the requirement was illegal but was substantially complied with, are claims of rights arising under that statute as to which the decision of a state court may be here reviewed under § 237 of the Judicial Code..

When a carrier sued in a state court for damages to an interstate ship-ment alleges in its answer that notice was not given as required by the bill of lading, the attention of the court is sufficiently challenged to a claim of federal right based on a federal statute, viz., the Car-mack Amendment.

And when in such case the state court decides that the requirement of the bill of lading is not controlling, it necessarily denies the claim of federal right, in the sense of Judicial Code, § 237.

A stipulation in a bill of lading that the carrier's liability for damage to goods shall be contingent upon notice being given by the consignee is valid if the terms are reasonable; and whether they are reasonable will depend on the circumstances in each case.

What constitutes a reasonable time in which notice may be required by the carrier depends on the nature of the goods; in the case of very

perishable fruit, thirty-six hours after the consignee has been notified of arrival at the place of delivery is not unreasonable.

Neither is it unreasonable to require that the notice shall be in writing in a case where by force of the Carmack Amendment the initial carrier is made liable for the defaults of connecting carriers, and the delivering carrier is the initial carrier's agent for the purpose of receiving the notice.

In a case of interstate shipment of fruit governed by the Carmack Amendment, before passage of the Act of March 4, 1915, c. 176, 38 Stat. 1196, the bill of lading stipulated that claims for damages must be reported by the consignee in writing to the delivering line within thirty-six hours after notice to the consignee of the arrival of the freight at the place of delivery, and that if such notice were not there given neither the initial carrier nor any of the connecting or intermediate carriers should be liable. The consignee after learning of the arrival of the fruit in badly damaged condition had time and opportunity to serve notice on the agent of the delivering carrier but did not do so. *Held:* (1) That the stipulation merely required the consignee to give notice within the time fixed of intention to claim damages, without ascertaining and specifying the amount.

(2) That the stipulation was reasonable and that non-compliance therewith excused the initial carrier from liability.

(3) That verbal notice to a dock master of the delivering carrier did not satisfy the stipulation.

118 Arkansas, 485, affirmed in part and reversed in part.

THE case is stated in the opinion.

*Mr. Thomas B. Pryor*, with whom *Mr. Edward J. White* was on the briefs, for the St. Louis, Iron Mountain & Southern Ry. Co.

*Mr. Robert A. Rowe*, with whom *Mr. Charles D. Folsom* was on the briefs, for Starbird.

MR. JUSTICE DAY delivered the opinion of the court.

A motion is made to dismiss the writ of error upon the ground that no federal question was properly raised in the state court. The disposition of this motion requires a consideration of § 237 of the Judicial Code, which section

is in effect but a re-enactment of § 25 of the Judiciary Act of September 24, 1789, and § 709 of the Revised Statutes of the United States.

This suit was brought by Miller, and revived by his administrator, to recover against the initial carrier, the St. Louis, Iron Mountain & Southern Railway Company, for its negligence and that of connecting carriers in failing to properly refrigerate certain carloads of peaches, shipped from a point in Arkansas to the City of New York over the lines of the initial and connecting carriers, and in the last-named city delivered upon the dock of the Pennsylvania Company, and found to be in a bad condition. Each shipment was interstate and upon a through bill of lading, the bill containing, among other things, a stipulation that the carrier should not be liable for damages unless claims for damages were reported to the delivering line within thirty-six hours after the consignee had been notified of the arrival of the freight at the place of delivery. In the answer filed in the case, making one of the issues upon which the case was tried and decided, the defendant set up this clause in the bill of lading and the failure of the plaintiff to comply with it.

Without now reciting other provisions of § 237, it is enough to say that a case is reviewable in this court where any title, right, privilege or immunity is claimed under a statute of the United States, and the decision is against the title, right, privilege or immunity especially set up or claimed by either party under such statute.

We have, therefore, to determine three propositions: (1) Was there a right involved which is the creation of a federal statute? (2) Was it sufficiently set up and called to the attention of the state court so as to be "especially set up or claimed," within the meaning of the act? (3) Was the decision against the right set up or claimed under the federal statute? If these requisites are complied with, the case is reviewable here.

1. On June 29, 1906, Congress passed the so-called Hepburn Act (34 Stat. 584), by § 20 of which it undertook to provide for the liability of carriers in interstate commerce, and to subject them, as to interstate shipments, to certain obligations which should supersede the varying requirements of the States through which interstate transportation might be conducted. The construction of this act came before this court in *Adams Express Company* v. *Croninger*, 226 U. S. 491, and upon full consideration it was held that the effect of the Carmack Amendment was to supersede all legislation in the particular States, and to embrace the liability of the carrier in interstate transportation. It was there said that almost every detail of the subject had been completely covered, and that there could be no rational doubt that Congress intended to take possession of the subject and lay down rules and regulations upon which the parties might rely and have their rights determined by a uniform rule of obligation. Among other things, the act required that the initial carrier should issue a receipt or bill of lading whenever it received property for transportation from a point in one State to a point in another State, and the initial carrier was made liable, not only for the results of its own negligence, but also for loss, damage or injury to the property occasioned by any common carrier, railroad or transportation company to which the property should be delivered and over whose line or lines the property might pass, and it was provided that no contract, receipt, rule or regulation should exempt such initial carrier from the liability imposed by the act.

As the shipment in this case was interstate, there can be no question that, since the decision in the *Croninger Case, supra,* the parties are held to the responsibilities imposed by the federal law, to the exclusion of all other rules of obligation. Since the Carmack Amendment, the carrier in this case is liable only under the terms of that

act of Congress, and the action against it to recover on a through bill of lading for the negligence of connecting carriers as well as of itself, was founded on that Amendment. *Atlantic Coast Line R. R. Co.* v. *Riverside Mills*, 219 U. S. 186, 196.

This principle has been so frequently recognized in the recent decisions of this court that it is only necessary to refer to some of them. In *Southern Railway Co.* v. *Prescott*, 240 U. S. 632, 636, 639, this court said:

"As the shipment was interstate, and the bill of lading was issued pursuant to the Federal Act, the question whether the contract thus set forth had been discharged was necessarily a Federal question. . . . Viewing the contract set forth in the bill of lading as still in force, the measure of liability under it must also be regarded as a Federal question. As it has often been said, the statutory provisions manifest the intent of Congress that the obligation of the carrier with respect to the services within the purview of the statute shall be governed by uniform rule in the place of the diverse requirements of state legislation and decisions."

In *Southern Express Company* v. *Byers*, 240 U. S. 612, 614, this court said:

"Manifestly the shipment was interstate commerce; and, under the settled doctrine established by our former opinions, rights and liabilities in connection therewith depend upon acts of Congress, the bill of lading and common law principles accepted and enforced by the Federal courts."

To the same effect, *Northern Pacific Ry. Co.* v. *Wall*, 241 U. S. 87, 91, 92; *Georgia, Florida & Alabama Ry. Co.* v. *Blish Milling Co.*, 241 U. S. 190; *Cincinnati, New Orleans & Texas Pacific Ry. Co.* v. *Rankin*, 241 U. S. 319.

2. As to the part of § 237 which deals with rights of this character, it requires that the right, privilege, etc., must be especially set up or claimed in order to make a decision

of the state court a proper subject of examination by writ of error from this court.

It would be superfluous to review the many decisions in which this court has had occasion to consider the effect of this provision, which has been in the law ever since the passage of the Judiciary Act of 1789 in practically the terms in which it is now embodied in § 237.

It is manifest that the object of the provision is to require that the alleged right of a federal character must in some way be drawn to the attention of the state court so that it may know, or from the nature of the pleadings be held to have known, that a federal right was before it for adjudication.

The Carmack Amendment is a federal statute regulating interstate commerce. It was passed under the power conferred by the Constitution upon Congress to regulate such commerce and is applicable throughout the United States and at once became the rule of law governing such shipments in all the courts of the country. *Claflin* v. *Houseman*, 93 U. S. 130, 136; *Second Employers' Liability Cases,* 223 U. S. 1.

Since the passage of the Carmack Amendment, the state court must be held to have known that interstate shipments were covered by a uniform federal rule which required the issuance of a bill of lading, and that that bill of lading contained the entire contract upon which the responsibilities of the parties rested. This is the result not only of our own holdings, but is universally held in the state courts.[1]

---

[1] *St. Louis, Iron Mountain & Southern Ry. Co.* v. *Faulkner,* 111 Arkansas, 430; *Gamble-Robinson Com. Co.* v. *Union Pacific Ry. Co.,* 262 Illinois, 400; *Johnson Grain Co.* v. *C., B. & Q. R. R. Co.,* 177 Mo. App. 194; *Clingan* v. *C. C. C. & St. L. Ry. Co.,* 184 Ill. App. 202; *Kansas City & Memphis Ry. Co.* v. *Oakley,* 115 Arkansas, 20; *Mitchell* v. *Atlantic Coast Line R. R. Co.,* 15 Ga. App. 797; *Bailey* v. *Missouri Pacific Ry. Co.,* 184 Mo. App. 457; *Spada* v. *Penn-*

The federal right is not required to be pleaded in any special or particular form. It is enough that it be relied upon and in a proper manner called to the attention of the court. Section 237 of the Judicial Code does not require that the statute creating the federal right shall be especially set up. The courts take judicial notice of the statute. It is the right, privilege or immunity of federal origin which must be brought to the attention of the state court.

This question has been frequently dealt with in the decisions of this court; under the Judiciary Act of 1789 a case arose which required a consideration of § 25 and the requirements to be observed in order to bring a case within its provisions,—*Crowell* v. *Randell*, 10 Pet. 368. In that case the requirements of the Judiciary Act and the former decisions of this court were reviewed by Mr. Justice Story. Dealing with this feature of the law, he said:

"That it is not necessary, that the question should appear on the record to have been raised, and the decision made in direct and positive terms, *ipsissimis verbis;* but that it is sufficient, if it appears by clear and necessary intendment, that the question must have been raised, and must have been decided, in order to have induced the judgment."

It is to be noticed, as to the manner of pleading a federal right, that Mr. Justice Story observed that all that is

---

*sylvania R. R. Co.*, 86 N. J. L. 187; *St. L. & S. F. Ry. Co. v. Bilby*, 35 Oklahoma, 589; *M., K. & T. Ry. Co.* v. *Hailey*, 156 S. W. Rep. 1119 (Texas); *American Silver Mfg. Co.* v. *Wabash Ry. Co.*, 156 S. W. Rep. 830 (Missouri); *Wabash R. R. Co.* v. *Priddy*, 179 Indiana, 483; *Atlantic Coast Line R. R. Co.* v. *Thomasville Live Stock Co.*, 13 Ga. App. 102; *Ford* v. *Chicago, R. I. & P. Ry. Co.*, 123 Minnesota, 87; *Joseph* v. *C., B. & Q. Ry. Co.*, 157 S. W. Rep. 837 (Missouri); *Barstow* v. *N. Y., N. H. & H. R. R. Co.*, 143 N. Y. Supp. 983; *M., K. & T. Ry. Co.* v. *Walston*, 37 Oklahoma, 517; *St. Louis & San Francisco R. R. Co.* v. *Zickafoose*, 39 Oklahoma, 302; *Texas & Pacific Ry. Co.* v. *Langbehn*, 158 S. W. Rep. 244 (Texas); *Cincinnati, N. O. & Texas Pac. Ry. Co.* v. *Rankin*, 153 Kentucky, 730.

essential is that it must appear by clear and necessary intendment to have been raised.  When the answer in this case set up the requirement of the bill of lading upon which the suit was brought, and the failure to comply with it, that was all that was necessary to fairly challenge the attention of the state court to rights existing by virtue of a federal statute as to carriers in interstate commerce.

In speaking of the necessity of especially setting up federal rights under § 709 of the Revised Statutes, now § 237 of the Judicial Code, this court said, in *Green Bay & Mississippi Canal Co.* v. *Patten Paper Co.*, 172 U. S. 58, 67:

"But no particular form of words and phrases has ever been declared necessary in which the claim of Federal rights must be asserted.  It is sufficient if it appears from the record that such rights were specially set up or claimed in the state court in such manner as to bring it to the attention of that court.

". . . In *Roby* v. *Colehour*, 146 U. S. 153, 159, it was said that 'our jurisdiction being invoked, upon the ground that a right or immunity, specially set up and claimed under the Constitution or authority of the United States, has been denied by the judgment sought to be reviewed, it must appear from the record of the case either that the right, so set up and claimed, was expressly denied, or that such was the necessary effect in law of the judgment.' 'If it appear from the record, by clear and necessary intendment, that the Federal question must have been directly involved, so that the state court could not have given judgment without deciding it, that will be sufficient.' *Powell* v. *Brunswick County*, 150 U. S. 433, 440; *Sayward* v. *Denny*, 158 U. S. 180; *Chicago, Burlington &c. Railroad* v. *Chicago*, 166 U. S. 226."

In *Ferris* v. *Frohman*, 223 U. S. 424, it appears that the complainant asserted a copyright in a certain play under

the common law and defendant set up the copyright for the play, the performance of which was sought to be enjoined, which copyright was issued under the laws of the United States. The state court enjoined the defendant from using that copyright, and it was held that was sufficient to show that a federal right had been set up and denied, as the copyright of the defendant was derived under the federal law. That the controversy raised a federal question was held by this court and the contrary contention disposed of in the following language:

"The defendants in error contest the jurisdiction of this court upon the ground that the bill was based entirely upon a common-law right of property, and insist that the upholding of this right by the state court raises no Federal question. But the complainants sued, not simply to maintain their common-law right in the original play, but by virtue of it to prevent the defendant from producing the adapted play which he had copyrighted under the laws of the United States. They challenged a right which the copyright, if sustainable, secured. R. S. 4952. It was necessary for them to make the challenge, for they could not succeed unless this right were denied. Ferris stood upon the copyright. That it had been obtained was alleged in the bill, was averred in the answer, and was found by the court. The fact that the court reached its conclusion in favor of the complainants, by a consideration, on common-law principles, of their property in the original play does not alter the effect of the decision. By the decree Ferris was permanently enjoined 'from in any manner using, . . . selling, producing, or performing . . . the said defendant's copyrighted play hereinbefore referred to for any purpose.' The decision thus denied to him a Federal right specially set up and claimed within the meaning of § 709 of the Revised Statutes of the United States. This court, therefore, has jurisdiction. *C., B. & Q. Ry. Co.* v. *Drainage Commissioners*, 200 U. S.

561, 580, 581; *McGuire* v. *Commonwealth*, 3 Wall. 382, 385; *Anderson* v. *Carkins*, 135 U. S. 483, 486; *Shively* v. *Bowlby*, 152 U. S. 1, 9; *Northern Pacific R. R. Co.* v. *Colburn*, 164 U. S. 383, 385, 386; *Green Bay &c. Canal Co.* v. *Patten Paper Co.*, 172 U. S. 58, 67, 68."

In *Creswill* v. *Knights of Pythias*, 225 U. S. 246, 258, the defendants were enjoined from using their corporate name, and it was held that, as this right or privilege was derived under a statute of the United States, authorizing the incorporation, the case was reviewable here under § 237 of the Judicial Code.

In *St. Louis, Iron Mountain & Southern Ry. Co.* v. *Mc-Whirter*, 229 U. S. 265, where a suit was brought to recover for a death occurring while plaintiff's intestate was engaged in interstate commerce, it was held that the question of the amount of evidence necessary to establish a liability was inherently of a federal character, and that this court might review the decision of the state court for that reason.

3. The other requisite essential to bring the case within § 237 of the Judicial Code is that the alleged federal right must be denied. It has never been required that a federal right must be denied in terms, but it has been uniformly held that it is sufficient if the state court necessarily denied it in the judgment rendered. If the plaintiff, in bringing this suit to recover against the initial carrier, not only for its own negligence but for that of the intervening carriers in the failure to care for and deliver the several cars of peaches, had said in terms that the suit was thus brought upon a through bill of lading because of the federal statute giving the right to thus prosecute the action, no one would doubt that the federal question was brought to the attention of the state court; when the plaintiff set forth facts which necessarily showed that a suit could only be maintained because of rights given under the Carmack Amendment, upon a bill of lading required by that

act, it was unnecessary to further label the cause of action by specific reference to the federal statute. *Jones National Bank* v. *Yates*, 240 U. S. 541, 550, 551. So, when the defendant set up the breach of the through bill of lading, and insisted that it had not been complied with, he would have made his case no stronger for the purposes of review here had specific reference been made to the federal statute which made this bill of lading the sole rule of obligation between the parties.

This record presented a suit which showed that it was necessarily brought under rights conferred by a federal act; the defendant specifically pleaded the failure to keep the obligation of the contract whose force was binding by virtue of such act; and the state court, in stating in its decision that this bill of lading had been issued, and would be controlling in the absence of special facts which it found as to the effect of verbal notice given to certain agents of the Pennsylvania Company in New York, necessarily denied the contention of federal right made by the defendant that the provision of the bill of lading was conclusive of the rights of the parties in this case and required written notice within thirty-six hours after notice to the consignee of the delivery of the goods.

For these reasons the case is properly reviewable here.

The stipulation reads:

"Claims for damages must be reported by consignee, in writing, to the delivering line within thirty-six hours after the consignee has been notified of the arrival of the freight at the place of delivery. If such notice is not there given, neither this Company nor any of the connecting or intermediate carriers shall be liable."

Five of the cars arrived at Jersey City and were lightered over to Pier 29 in the evening, where they were opened and unloaded by the longshoremen of the Pennsylvania Company. The record shows that the course of business at the dock where these peaches were delivered is: At

midnight a bulletin is put up showing the car numbers and consignees. At one o'clock in the morning the dock is opened to the dealers, usually present in large numbers, who then go upon it and find their shipments. Miller testified that he had to get trucks to take the peaches to his store and then had to get extra men to sort and re-pack them so that they could be sold the following day, and that he could not tell within two or three days and until his bookkeeper had figured up what was going to be lost on each car, what the amount of the damage was, and in some cases it would be three or four or five days after the car arrived before he knew.

Miller further testified that by reason of a warning from the Health Department that it would destroy ensuing shipments of fruit if they arrived in as bad condition as those in preceding cars, he had the railroad company, upon the arrival of the other five cars in Jersey City, unload them and take the peaches to the Merchants Refrigerating Company's plant, where he had them sorted and repacked and then loaded on cars and taken over to Pier 29 for sale. He testified that he was notified of the cars' arrival and went over to the Refrigerating Company; that he put a lot of men at work sorting and repacking the peaches; that it would take from two to four days to do this and another day to put them on board the cars and get them over to Pier 29 and sold and it would be another day before the reports of sale could be made up.

The state court held that the stipulation, in view of the perishable character of these shipments, was a reasonable one, but as there was proof in the case to show the knowledge of the superintendent of the dock of the Pennsylvania Company, where delivery was made, as to five cars of peaches, that as to such cars the necessity of notice was dispensed with, notwithstanding the requirement of the bill of lading. As to the other cars involved in the cross-writ of error, Case No. 796, the court held that the only

knowledge of the condition of the peaches was that of longshoremen working on the dock and not under duty to inspect the fruit, and that as to such cars the action must fail.

Stipulations of this character have not infrequently been inserted in bills of lading, and where reasonable in their terms have been sustained by this court. *Express Company* v. *Caldwell*, 21 Wall. 264; *Queen of the Pacific*, 180 U. S. 49. Whether such stipulations are reasonable or not depends on the circumstances of each case. *Pennsylvania Co.* v. *Shearer*, 75 Ohio St. 249. We agree with the Supreme Court of Arkansas that, in view of the highly perishable nature of this shipment and the necessity of giving notice promptly in order that the carrier might have an opportunity to examine the same and determine the nature and extent of the injury thereto before the fruit was sold or destroyed, the stipulation requiring notice of such intention within the time named in the bill was not unreasonable. What constitutes reasonable time in which notice may be required must depend on the nature of the freight, and if such notice is to be of service in cases like the present it must be given promptly. In *Northern Pacific Ry. Co.* v. *Wall, supra,* this court dealt with the requirement of a bill of lading that the shipper must, as a condition precedent to his right of recovery for injury to cattle in transit, give notice in writing to some officer or agent of the initial carrier before the cattle were removed from the place of destination, and held that such requirement must be complied with by giving notice to the agent of the delivering carrier, as the Carmack Amendment makes such carrier for this purpose the agent of the initial carrier. And see *Chesapeake & Ohio Ry. Co.* v. *McLaughlin,* 242 U. S. 142. The Carmack Amendment requires the receiving carrier to issue a through bill of lading and makes that bill of lading the contract of shipment, and the initial carrier is made liable for injuries in

the course of transit over connecting lines. The require-
ment that notice in writing of a claim for damages shall
be given in such cases to the delivering carrier, who is the
agent of the initial carrier for the purpose of completing
the shipment, is but reasonable. In *Georgia, Florida &
Alabama Ry. Co.* v. *Blish Milling Co., supra,* it was held
that a stipulation of this kind was complied with when
the notice in writing was given by telegram within the
time named in the bill of lading.

It is not difficult for the consignee to comply with a
requirement of this kind, and give notice in writing to the
agent of the delivering carrier. Such notice puts in per-
manent form the evidence of an intention to claim dam-
ages and will serve to call the attention of the carrier to
the condition of the freight, and enable it to make such
investigation as the facts of the case require while there is
opportunity so to do.

In this case no attempt was made to give such notice
in writing to the agent of the delivering carrier. The
record shows the delivering carrier had a freight agent at
the place of delivery in charge of the docks upon which
the peaches were delivered, and he testifies without con-
tradiction that no such notice was given to him; that he
was acquainted with Adam Miller, the consignee, a com-
mission merchant in New York City; and that he never
heard of any claim for damages until after the beginning
of the present suit. The fact that the peaches were greatly
depreciated was known to the consignee very shortly
after arrival and within sufficient time to have enabled
him to give notice in writing within the time fixed of his
intention to claim damages.

It is true that the record contains testimony tending
to show that it would take more than thirty-six hours to
separate the good peaches from the bad, and to re-crate
and sell the good ones. But the bill of lading in this case
only requires that "claims for damages must be *reported*

by the consignee, in writing, to the delivering line" within the time named. This bill of lading contained no stipulation requiring a specific claim to be filed within thirty-six hours fixing the amount of damages to be claimed. It was entirely consistent with this requirement, on discovery of the bad condition of the peaches, to have given notice within the time stipulated of the intention to make a claim for damages, although the exact amount of the claim might not have been ascertained. This would have given an opportunity for the delivering carrier to make the examination which it was the principal purpose of the stipulation to afford. *Northern Pacific Ry. Co.* v. *Wall, supra;* *St. Louis &c. R. R. Co.* v. *Keller,* 90 Arkansas, 308, 313. As was said in the *Keller Case:* "The contract of shipment in this case specifically provided that, before a recovery could be had, a notice in writing must be given of loss or damage within thirty hours after the arrival of the peaches at destination and their delivery; that is to say, a notice of the intention to claim damages must be so given. And in this case such notice was not given." Compliance with the requirement of the bill of lading in this respect would leave a right of recovery within the period named by the statute of limitations if the shipper has a good cause of action. *Pennsylvania Co.* v. *Shearer,* 75 Ohio St., *supra,* 254.

We find nothing unreasonable in the stipulation concerning notice, and there was no attempt made to comply with it. We therefore think the Supreme Court of Arkansas erred in holding that verbal notice to the dockmaster of the condition of the peaches was a compliance with the terms of the contract.

We may note that this case arose before the passage of the Act of March 4, 1915, 38 Stat. 1196, regulating, among other things, this feature of a bill of lading issued under the Carmack Amendment.

On cross-writ of error, No. 796, a reversal is sought of

the judgment of the Supreme Court of Arkansas as to the five cars where the damaged condition of the peaches was shown to be known to the longshoremen. This cross-writ involves the liability of the carrier under the bill of lading and it is assigned for error that the stipulation in question violates the act of Congress known as the Hepburn Act and the Carmack Amendment, and there are other reasons assigned for the alleged invalidity of the stipulation in the bill of lading. This court has jurisdiction upon the cross-writ. As to these cars, we think the conclusion reached by the Supreme Court of Arkansas was a correct one, and upon the cross-writ of error the judgment is affirmed. As to No. 275, the writ sued out by the railroad company, the judgment of the Supreme Court of Arkansas is reversed, and the cause remanded to that court for further proceedings not inconsistent with the opinion of this court.

*Reversed,* in part, and *Affirmed,* in part.