J. C. HUBINGER BROS. COMPANY, Appellant, v. CHICAGO, BURLINGTON & QUINCY RAILROAD COMPANY, Appellee.

CARRIERS: Carriage of Goods—Belated Filing of Claims. A claim for the nondelivery of a shipment, not made in writing and within four months after such nondelivery, in accordance with an interstate bill of lading, is completely barred, it appearing that the carrier had in no manner waived such requirement,—conceding that such waiver, if made, would be effective.

*Appeal from Lee District Court.*—W. S. HAMILTON, Judge.

NOVEMBER 20, 1923.

REHEARING DENIED FEBRUARY 16, 1924.

ACTION to recover from this defendant, as the initial carrier, for a shipment of feed from Keokuk, Iowa, to Springville, New York. Trial to a jury. At the close of all the evidence, both plaintiff and defendant moved for a directed verdict. Plaintiff's motion was overruled, and defendant's sustained. The plaintiff appeals.—*Affirmed.*

*Bernard A. Dolan,* for appellant.

*Hazen I. Sawyer* and *Palmer Trimble,* for appellee.

PRESTON, C. J.—The action arises under the Interstate Commerce Law. There is no dispute in the facts.

It appears that, in September and October, 1909, the plaintiff shipped two carloads of feed, consigned to New York. Bills of lading were issued by defendant for each car, and they contain the condition that claims for loss, damage, or delay must be made in writing to the carrier at the point of delivery or at the point of origin within four months after delivery of the property, or, in case of failure to deliver, then within four months after a reasonable time for delivery has elapsed; and that, unless claims are so made, the carrier shall not be liable. It is conceded that no claim or notice thereof was made within four months, or until nearly two years had elapsed. The defendant alleges that, by reason of such failure, plaintiff may not recover. The defendant also pleaded, and the evidence sustains the allegation, that the feed arrived at Buffalo, New York, October 15, 1909, and was unloaded and placed by the Western Transit Company in one of its warehouses, from which it was to be delivered to the Buffalo & Susquehanna Railway, for transportation from Buffalo to Springville; that immediately the Western Transit Company notified the Buffalo & Susquehanna Company of the arrival and the destination, and requested said company to furnish cars to carry the feed to its destination, which is located on its line; that said railway company neglected to furnish cars prior to November 1, 1909; that

said Western Transit Company had ceased to hold said feed as a carrier, and retained same only as a warehouseman, and was so holding it on November 1, 1909, on which date it was destroyed by fire in said company's warehouse at Buffalo, without any fault on the part of the defendant. It is further alleged that this defendant carried said feed from Keokuk, without loss or damage, to its eastern terminus, and delivered same as directed, to the Western Transit Company; that, after notice to the Buffalo & Susquehanna Company, a connecting carrier with the Western Transit Company, said Buffalo & Susquehanna Company failed to furnish cars, and the feed was destroyed by fire, as before stated; that said Western Transit Company at once notified the plaintiff of the destruction of said feed, and that, under the law governing defendant and its connecting carrier, providing that the defendant is liable for the failure to deliver said feed, defendant might recover any amount for which it might be held liable, against its connecting carrier, which was at fault for the failure to deliver said feed; that the Buffalo & Susquehanna Company was solely and alone at fault for the failure to deliver said feed, in failing to furnish cars prior to November 1, 1909; that said railway company became insolvent, May 1, 1910, and has ever since been insolvent, so that this defendant cannot recover from said company any amount for which it might be liable to plaintiff in this action; that defendant has been prevented, by the delay in bringing this action, from recovering the amount, if any, for which it might be liable; that, had plaintiff filed a suit against defendant and prosecuted it with diligence, it would have been determined in time for defendant to have recovered from the terminal carrier, the Buffalo & Susquehanna Company, if this defendant had been held liable; and that, by reason of the delay of plaintiff in filing claim and bringing this suit, after said railway company became insolvent, plaintiff is guilty of laches, and is barred from recovering against this defendant as initial carrier. These matters so set up by the defendant are established by the evidence, without dispute.

It is further shown that plaintiff filed with the defendant its claim in writing for this loss, June 28, 1911, and that it was rejected February 12, 1912. This suit was brought on January

12, 1914, more than four years after the property was destroyed. It also appears from the evidence that, within three months from the time of shipment, plaintiff was informed of the non-delivery of the feed, and plaintiff traced for it and knew of the loss within three months from the time of shipment.

For reply, the plaintiff sets up the order of the Interstate Commerce Commission of February 9, 1914, and claims that thereby the four months' limitation was suspended and waived. The order was introduced in evidence. Defendant's motion for a directed verdict embodied all the matters pleaded by it. It may be that, as to some of them, they are not well taken. If any one of the grounds is well taken, an affirmance is called for. We shall not discuss all the several propositions. We are of opinion that some of the points are well taken.

1. Appellee contends that, because plaintiff did not give notice of its claim within four months from the time the shipment should have been delivered, it is, by virtue of its bill of lading, precluded from recovery; that the carrier cannot waive notice, and to do so would constitute a discrimination which is prohibited. Appellee cites on this proposition *Georgia, F. & A. R. Co. v. Blish Milling Co.*, 241 U. S. 190 (60 L. Ed. 948); *Adams Exp. Co. v. Croninger*, 226 U. S. 491; *Emery & Co. v. Wabash R. Co.*, 183 Iowa 687; *Keeney v. Chicago, B. & Q. R. Co.*, 183 Iowa 522. See, also, *Henningsen Produce Co. v. American R. Exp. Co.*, 152 Minn. 209 (188 N. W. 272); *Fay v. Chicago, R. I. & P. R. Co.*, 186 Iowa 573; *Metz Co. v. Boston & M. R. Co.*, 227 Mass. 307 (116 N. E. 475); *St. Louis, I. M. & S. R. Co. v. Starbird*, 243 U. S. 592 (61 L. Ed. 917, 925). In the *Blish* case, it was said:

"The parties could not waive the terms of the contract under which the shipment was made, pursuant to the Federal Act; nor could the carrier by its conduct give the shipper the right to ignore these terms, which were applicable to that conduct, and hold the carrier to a different responsibility from that fixed by the agreement made under the published tariff and regulations. A different view would antagonize the plain policy of the act, and open the door to the very abuses at which the act was aimed."

In the *Blish* case, however, it was held that telegrams sent

by the shipper constituted notice. So it was in the *Emery* case, where the agent of the consignee and of the delivering carrier inspected the shipment together, and made record of the damages. The agent of the delivering carrier made an inspection report and notation of the damages upon the freight receipt. The consignees promptly notified the carriers that they would file claim for damages. Formal claim was not filed until after the four months, but it was held that the notice given was sufficient. There is some discussion on the question of waiver, as applied to the situation presented in that case. It was conceded in the opinion that the discussion of that question was not necessary to a determination of the case. In that case, the evidence showed that the carrier had waived notice. Not so in the instant case. Here the conditions are not the same as there. We think that neither the *Emery* case nor any other can be construed as holding that the preliminary report of the Interstate Commerce Commission was intended as an order compelling the carriers to waive the four months' provision of their tariffs and bills of lading. Such an interpretation would place it in conflict with the law and with the wording of the report itself.

Appellee contends that the Interstate Commerce Commission had no power to make such an order (citing *Interstate Commerce Com. v. Louisville & N. R. Co.*, 227 U. S. 88; *Atlantic C. L. R. Co. v. Interstate Commerce Com.*, 194 Fed. 449; I. C. C. Conference Ruling 145; *American Sugar Ref. Co. v. Delaware, L. & W. R. Co.*, 207 Fed. 733). However this may be, there can be no question, we think, but that plaintiff's alleged cause of action had long been barred, prior to the order of 1914. We are of opinion that the order was not intended to and did not relate back, and revive an alleged cause of action already barred, where, as here, no notice of any kind was given.

2. The writer is of opinion that plaintiff should not be entitled to recover, because of its laches, and that this is so, independent of the four months' notice or claim. Under the Federal act, the Buffalo & Susquehanna would be liable to this defendant. The undisputed evidence is that said company alone was at fault. It further appears that the Buffalo & Susquehanna Company became insolvent November 1, 1910, or a year after the fire, and that its liabilities exceeded its assets to such

an extent that it was unable to pay its bonded indebtedness,— much less its indebtedness contracted in the ordinary course of business. This was eight months after the expiration of the four months' period, and nine months after the plaintiff herein had knowledge of the destruction of the property. Presumably, the claim could have been made off the Buffalo & Susquehanna Company, during the eight or nine months stated. At least, there is no showing to the contrary. It is clear that the changed conditions operate to the disadvantage of this defendant. We said in *Gray v. Bloom,* 151 Iowa 566, 570:

" 'The law of laches, like the principle of the limitation of actions, was dictated by experience, and is founded in a salutary policy. The lapse of time carries with it the life and memory of witnesses, the muniments of evidence, and other means of proof. The rule which gives it the effect prescribed is necessary to the peace, repose, and welfare of society. A departure from it would open an inlet to the evils intended to be excluded.' "

This is the rule in equity; but we held, in *Doyle v. Burns,* 123 Iowa 488, 509, that laches and acquiescence are a species of estoppel, and that, in a law action, laches and acquiescence may be material in such a forum, as well as in a court of chancery; that at law, mere delay or acquiescence will not bar the action, unless prolonged for the statutory period, save where there are present the elements of an estoppel. These being present, laches and acquiescence may constitute a bar to a law action. I think that these elements are present in the instant case. On the question of acquiescence and of lying by and prejudice to the adverse party, see 10 Ruling Case Law 397, 400. A majority of the court prefer to base their decision upon the question of notice, which of itself is decisive of the case.

The judgment is—*Affirmed.*

STEVENS, DE GRAFF, and VERMILION, JJ., concur.