Reuben Dworsky, Plaintiff, *v.* The Pennsylvania Railroad Company, Defendant.

Supreme Court, Trial Term, Tompkins County, August 14, 1936.

*Abraham W. Feinberg,* for the plaintiff.

*Diven & Diven,* for the defendant.

Personius, J.   About September 3, 1932, the plaintiff shipped a carload of cattle from Orrville, Ohio, to himself at Ithaca, N. Y. They arrived September seventh.   The plaintiff sues in negligence for damages to the shipment alleged to have been caused by delay and rough handling.

Section 2(c) of the uniform live stock contract, under which the shipment was made, provides, so far as applicable here: " As a condition precedent to recovery, *claims must be filed in writing*

with the receiving or delivering carrier * * * within nine months after delivery * * *. Where claims are not filed * * * in accordance with the foregoing provisions no carrier hereunder shall be liable, and such claims will not be paid." (Italics ours.) This provision cannot be waived. (*Meyers* v. *Cleveland, etc., R. R. Co.*, 183 App. Div. 453; *Browning-King & Co.* v. *Davis*, 120 Misc. 520, 522; affd., 208 App. Div. 780, and cases cited.)

The plaintiff does not claim waiver but substantial compliance. No formal written claim was filed. ·

The cattle were delivered by the Delaware, Lackawanna and Western Railroad Company. Max H. Dworsky, consignee's son, came to the station and later the consignee (plaintiff). The plaintiff complained to the local agent, saying the cattle were in bad condition and badly damaged. The plaintiff called a veterinary, Dr. Fincher. The agent asked for a copy of his report for the purpose of making notation on the freight bill, " assuming that he [plaintiff] would naturally enter a claim for the damages." The agent called another veterinary, Dr. Goff, filled out a blank, " Report of over, short, loss or damage to carload freight," herein called the " report," attached Dr. Goff's report thereto and sent it to the delivering carrier who acknowledged receipt September nineteenth. This report clearly identifies the shipment and states: " Checks at East Buffalo N. Y.— D. L. & W — found 1 *calve* dead — over — at Stock Yards. Consignee claims 2 calves born in transit, and 2 calves short, regardless of the fact that consignee received here 25 cows and 11 calves as billed. Also claimed 2 cows lame. We called a veterinary to examine the entire load. See copy veterinary report as to condition attached." At the bottom appears in typewriting: " Consignee Max H. Dworsky.......... S. S. Normile, Agent. (If inspected jointly.) "

The agent's signature was typewritten by him. He also typed the name " Max H. Dworsky." The latter was not the consignee but his son. Entering his name was not intended as a signature. The body of the report contained the information that the unloading was checked by " carrier and consignee." Max H. Dworsky's name was apparently entered to show that he, and not the consignee personally, made the inspection.

The plaintiff relies on this report as sufficient compliance with the requirement of the contract that " claims must be filed in writing." It is in writing, identifies the shipment, was filed with the proper party, and contains sufficient information to facilitate investigation. These requirements of a claim were met but did it advise the carrier that the consignee was making claim for compensation for his damages or advise it of his purpose and intent so to do? We think not.

Though no particular form of claim is required (*Georgia, etc., R. Co.* v. *Blish,* 241 U. S. 190, 198) to be sufficient, the writing " must possess the characteristics of a demand for compensation or amount to a notice of intention to claim compensation for loss suffered." (*Browning-King & Co.* v. *Davis,* 120 Misc. 520, 521; affd., 208 App. Div. 780; *Anchor Line* v. *Jackson,* 9 F. [2d] 543; *St. Louis, etc., R. Co.* v. *Starbird,* 243 U. S. 592, 605.) " Notice of damage is not notice of claim for damage, and the ship owner's knowledge that damage has occurred does not remove the necessity for giving notice of claim." (*The J. L. Luckenbach,* 65 F. [2d] 570, 574; *Gooch* v. *Oregon, etc., R. R. Co.,* 258 U. S. 22; *The West Arrow,* 80 F. [2d] 853, 856.) " The authorities draw a distinction between *notice* of damage and *claim* for damages. * * * Strict compliance is usually required with respect to the *claim* for damage." (*The Georgian,* 4 Fed. Supp. 718, 726.) In *Anchor Line* v. *Jackson* (*supra*) the court said (at p. 545): " The upshot of these cases is that notice that the goods have been damaged is not notice of a claim for recoupment. The result is perhaps a narrow interpretation, and has not been established in this circuit without strong opposition. Its existence is, however, unquestioned, and it seems to us undesirable by nice distinctions to invite perpetual litigation in its application. There can, indeed, be no doubt that it is one thing to advise a ship of the fact that she has discharged damaged goods and another that you mean to hold her for the loss. The two may shade into each other, but they are quite distinct. * * * In the case at bar * * * not only did he [plaintiff] call the attention of the ship's agents to the damage, and have it noted on the receipts, but he took an agreed tally. But all of this did not go beyond showing that he was preparing for a claim, which he might or might not finally decide to present. It is impossible even to know whether he then intended to make one; but, if it were possible, that would not be enough. The phrase calls for more. A ship is not bound by inference to gather the consignee's purposes; there must be language showing an intention to make the claim. While it need not be written or formal, it must advise the ship unequivocally that she is to be held."

The report here is nothing more than what might be termed an inter-office communication required of the local agent in every instance where there was any shortage or damage. It is a notice of damages, not a claim for compensation. It contained no statement that the consignee was demanding compensation or intending to do so. Under these circumstances, we do not think this report, not signed by the consignee, conveyed to the claim agent, expressly or even by inference (which would not be sufficient), the idea

that the consignee was demanding compensation or intended to do so.

True, in some of the authorities cited, the only notice given was oral, but the principle is established that the notice, whatever its form, must be something more than a notice that the shipment has been damaged. It must contain a claim for or indicate an intent to claim compensation.

Of the cases cited by plaintiff: In *Georgia, etc., R. Co.* v. *Blish* (241 U. S. 190) the consignee telegraphed, " We will make claim against railroad." In *St. Louis, etc., R. Co.* v. *Starbird* (243 U. S. 592) the court, holding that notice to a dockmaster was not sufficient, said (at p. 605): " Such [written] notice puts in permanent form the evidence of an *intention to claim damages.*" (Italics ours.) In *McElwain* v. *St. Louis, etc., Co.* ([Mo. App.] 180 S. W. 1018) the court reversed a verdict for the plaintiff rendered on the theory of waiver but remanded the cause for a new trial. It appeared that in a conversation between the consignee and local agent, the agent made memoranda of the injuries and said that he would wire this information to headquarters. In a few days a claim agent arrived, made an investigation and talked compromise. The court said it might be inferred that the station agent was acting as the consignee's agent and that a new trial might develop the written statement given to the company and concluded that (at pp. 1019–1020) " if the defendant Company * * * received a written report from the station agent * * * advising defendant that there was damage and injuries to the stock, *and that plaint'ff was making a claim * * *, all of which was set in motion and done at plaintiff's instance*, then the plaintiff has fully complied." (Italics ours.) In the present case the consignee-plaintiff never suggested that the local agent make the report, the agent never said he would, and apparently the consignee never knew that he had or what it contained, until the time of the trial. The agent was acting as agent for the carrier, not the consignee. As distinguishing *Anchor Line* v. *Jackson* (*supra*), the plaintiff also cites *Ilfeld Co.* v. *Southern Pac. Co.* (48 F. [2d] 1056). That case was construing the act of 1915 (now repealed) prohibiting any provision in the bill of lading for notice of claim in negligence cases. It held that this provision dispensing with " notice of claim " rendered invalid a provision requiring " notice of injury." It was construing a statute and held (at p. 1058) that " if a carrier is not (under the statute) entitled to notice of a claim, it is not entitled to notice of an injury." It did not hold that the two were synonymous but that the statute prohibiting the insertion of the former impliedly prohibited the insertion of the latter. It does not " destroy "

the *Anchor Line* case. It cites it and another case saying: "But none of these cases construed the Cumming Amendment."

We do not pass on the defendant's contention that the writing (report) is insufficient because not made or signed by the consignee or his agent. We hold that it is insufficient in substance.

A verdict in favor of the defendant and against the plaintiff dismissing the complaint, with costs, is rendered. (Civ. Prac. Act, § 440-a.)