**R. D. Meyer, Plaintiff-Appellee, v. Southern Railway Company, Defendant-Appellant.**

**Gen. No. M–50,499.**

First District, Fourth Division.

December 23, 1966.

Bruce E. Brown, of Chicago, for appellant.

H. Haskell Lurie, of Chicago, for appellee.

MR. JUSTICE McCORMICK delivered the opinion of the court.

This action was brought for alleged damage to a carload of produce during shipment from McClintock, Colorado, to Birmingham, Alabama. The case was tried by a magistrate without a jury. The magistrate found the issues for the plaintiff and entered judgment in favor of the plaintiff in the sum of $1,048.53.

The facts as to the movement of the shipment are not in dispute. On July 30, 1960, the Southern San Luis Valley Railroad Company received a carload of lettuce and spinach from Mizokami Bros. Produce at McClintock, Colorado, consigned to J. Weingarten, Inc., at Houston, Texas. The routing as shown in the bill of lading was "SSLV–DRGW–C&S–FWD." On August 4, 1960, Mizokami Bros. Produce sent a diversion order to the Fort Worth & Denver Railroad Company at Houston, Texas, which read in part

> ART 32523 lettuce out McClintock, Colo., July 30th, now consigned J. Weingarten, Inc., Houston, Texas routed SSLV–DRGW–C&S–FWD; Std. Refrigeration 3% salt based on amount ice supplied.

> Divert to: DEKLE BROKERAGE CO., Birmingham, Ala., routed: SSLV–DRGW–C&S–FWD–Houston–MOPAC–New Orleans–SOU; Change service to Standard Refrigeration, 5% salt at each regular icing station based on amount ice supplied, protect thru rate.

> MIZOKAMI BROS
> /a/ Dick Winn

Accordingly, the shipment moved from Houston to New Orleans by Missouri Pacific; from there it was moved by the New Orleans and Northeastern Railroad Company to Meridian, Mississippi, then by the Alabama Great Southern Railroad Company into Birmingham, Alabama, its final designation.

The New Orleans and Northeastern Railroad Company is a Louisiana corporation; the Alabama Great Southern Railroad Company is an Alabama corporation; the Southern Railway Company is a Virginia corporation; all of them are members of the Southern Railway System. Southern Railway System is not a legal entity. The Southern Railway Company does not have any line of railroad between New Orleans, Louisiana and Birmingham, Alabama. It does, however, have extensive lines of railroad in Birmingham, and the warehouse of Dekle Brokerage Company (the consignee in the diversion order) was served by spur tracks jointly by the Southern Railway Company and the Alabama Great Southern Railroad Company. It appears from the record that the Southern Railway Company did not handle the shipment herein involved. It is uncontradicted that the defendant did not receive any of the freight charges, nor did it pay any of the costs of handling the shipment. The freight bill was issued on a printed form of the Alabama Great Southern Railroad Company; superimposed on the top of the printed form was the stamp of the Southern Railway Company. The freight bill is stamped paid, and this stamp bears the name, Southern Railway Company; underneath the name are the initials A.G.R.R. The shipper, Mizokami Bros. Produce, assigned its claim to plaintiff, R. D. Meyer, for a recited consideration of One Dollar.

The lettuce and spinach were in good condition when received by the initial carrier, SSLV Railroad Company; when delivered at destination they were in a decayed condition, with approximately 60 percent bacterial soft rot.

On January 6, 1965, the trial court entered judgment on its findings in favor of the plaintiff, R. D. Meyer, and against the defendant, Southern Railway Company, in the sum of $1,048.53. From that judg-

4

ment the defendant took an appeal. At the time the judgment was entered the court made the following oral statement in open court:

> "I was very much concerned with the Carmack Amendment, . . . and the common law liability, if there is no conflict, could impute liability on the defendant railroad company, here, *who, it is agreed upon, was not the delivering carrier—rather, the delivering carrier was the Alabama, Great Southern Railroad Company.*"

The court further said:

> ". . . it didn't take the Court long to determine that the defendant, Southern Railway Company, was probably responsible as a corporation involved, rather than the Southern Railway System, in my opinion, and that is one of the findings I make.
> ". . .
> "One [issue of fact] that concerned me most was whether or not—in 63 M 1588—whether we could determine that the Southern Railway Company is responsible, *even though we all agree that the Alabama, Great Southern Railway Company delivered car* . . .
> "The Court feels that in that capacity, they acted as agents of the Southern Railway Company, and therefore the Southern Railway Company is liable, if the specific negligent acts were created, in fact, by the Alabama, Great Southern Railway Company, so that there was a major point that concerned the Court to a great extent, . . .
> ". . .
> "I believe that the Carmack Amendment does include, under these circumstances, that not only was the delivering carrier, or one who had the respon-

5

sibility of delivering, but also the original carrier, would also be responsible, if it uses on its own, another railway company as its agent, and that will be the finding that I have concluded."

The court then orally pronounced judgment. How the trial court reached its conclusion is not clear; to make such a determination the court must necessarily have found that the Southern Railway Company was the delivering carrier. The only question in the suit is the application of the Carmack Amendment, 49 USC § 20(11). Under the Amendment it is affirmatively required that the initial carrier issue a receipt or bill of lading when it receives property for transportation from a point in one state to a point in another. Southern Pac. Co. v. Stewart, 245 US 359, 62 L Ed 349, 38 Sup Ct 130. The initial carrier is also made liable to the lawful owner thereof for any loss, damage or injury to the property caused by it. Cincinnati, N. O. & T. P. R. Co. v. Rankin, 241 US 319, 60 L Ed 1022, 36 Sup Ct 555. It is also made liable for any loss, damage or injury to such property by any common carrier, railroad or transportation company to which such property may be delivered or under whose line or lines such property may pass within the United States when transported on a through bill of lading. St. Louis, I. M. & S. R. Co. v. Starbird, 243 US 592, 61 L Ed 917, 37 Sup Ct 462. In the case before us the uniform straight bill of lading was issued by Southern San Luis Valley Railroad Company; thus, as the initial carrier, SSLV would have been responsible for the initial damage or for any damage on the connecting lines, on the theory that the SSLV had appointed such connecting lines its agents. The question of any possible liability of SSLV is not involved here.

The entire weight of plaintiff's argument and the trial court's finding is that the defendant was liable

6

under the further provision of the Carmack Amendment which is:

> ". . . any common carrier, railroad, or transportation company delivering said property so received and transported shall be liable to the lawful holder of said receipt or bill of lading or to any party entitled to recover thereon, whether such receipt or bill of lading has been issued or not, for the full actual loss, damage, or injury to such property caused by it or by any such common carrier, railroad, or transportation company to which such property may be delivered or over whose line or lines such property may pass within the United States . . ."

In order to reach such conclusion the court must take the view that the diversion order rerouting the shipment of produce from Houston to New Orleans was a direction to route it over the Southern Railway Company. As a matter of fact, the Southern Railway Company has no railroad line running from New Orleans to Birmingham, although it does have lines in Birmingham, and the spur tracks leading to the Dekle Brokerage Company in Birmingham, Alabama, were jointly owned by the Southern Railroad Company.

The Carmack Amendment further provides that the delivering carrier shall be construed to be "the carrier performing the line-haul service nearest to the point of destination and not a carrier performing merely a switching service at the point of destination." The trial court's determination must have depended upon its interpreting the "SOU" as meaning the Southern Railway Company and not the Southern Railway System. The Alabama Great Southern Railroad Company was the last carrier to bring the car into Birmingham. It is a member of the Southern Railway System. It is apparent from the

record that the Southern Railway System is a complex system of railroad companies, and that in some instances, in cooperation with its member companies, it maintains joint employees and allocates the proportion of freight charges to each of its constituents.

The Southern Railway Company did not have any contact with the shipment in question. The plaintiff and the trial court relied heavily on Mirski v. Chesapeake & Ohio Ry. Co., 31 Ill2d 423, 202 NE2d 229; however, that decision, while factually in point, is not determinative of the issue here. In that case the plaintiff had purchased 1,715 boxes of cherries which were shipped to Chicago, then at plaintiff's direction the shipment was diverted to Cincinnati, Ohio, arriving there aboard the defendant carrier. It was not contended that there was any undue delay in transportation. When the car was opened the cherries allegedly were found to be in a state of decay. That case turned on two issues: 1) whether plaintiff established a prima facie case of liability which defendant failed to rebut; and 2) if so, whether the appropriate measure of damages was applied.

In the case before us there is neither the question of proving a prima facie case of liability, nor the question of damages. Accepting the alleged damages to be a fact, and that the proper measure of damages was applied, the question that must first be determined, and the sole issue before this court, is whether the Southern Railway Company is a proper party to assume this liability and pay the damages.

There is uncontradicted evidence in the record that in the routing order "SOU" was intended to mean that the shipment be made by the best route over the Southern Railway System lines, and this custom was not only used within the system, but by other shippers and carriers. It would seem farfetched to interpret "SOU" as meaning that the shipper would designate the Southern Railway Company when it did not have

lines running from New Orleans, Louisiana to Birmingham, Alabama. Arrangements between corporations for economy and convenience do not necessarily make the parties generally responsible for each other's liabilities.

Plaintiff cites cases which hold that where one railroad acts as agent to another railroad in transporting a particular shipment, liability will result. Missouri Pacific v. Reynolds-Davis, 268 US 366, 69 L Ed 1000, 45 Sup Ct 516, was cited by plaintiff, but is inapplicable here, since there is no proof of the employment of the Alabama Great Southern Railroad by the Southern Railway Company. Also, this case was decided before the enactment of the Carmack Amendment. The other cases cited by the plaintiff follow the principle that each connecting carrier on through routes in the transportation of a shipment is the agent of the initial carrier to perform the contract. Those cases are not applicable here, since the Alabama Great Southern and the defendant, Southern Railway Company, were not connecting carriers on that shipment. Chicago, R. I. & P. R. Co. v. North American Cold Storage Co., 244 Ill App 522, holds that the Chicago, Rock Island & Pacific Railroad, which transported the car from Omaha, Nebraska to Chicago, was the delivering carrier, and that the Pennsylvania Railroad Company, which performed a switching service at the destination, was the agent of the delivering carrier and was not the proper party-plaintiff in a suit in replevin to recover the shipment which had been misdelivered. There is nothing in the record before us to indicate that the Alabama Great Southern was performing a switching service, nor is there anything in the record to show that the defendant ever had possession of the shipment, or ever did anything to engage the Alabama Great Southern to make the delivery, or to indicate that it acquiesced or consented to such delivery. Nor is there anything in the case to show that the defendant had in any way assumed any responsibility for the delivery.

In order to prove a prima facie case the plaintiff must prove by a preponderance of the evidence that the defendant was the delivering carrier and that the goods were delivered to it. Upon proving such facts, the plaintiff makes out a prima facie case and the burden of going forward shifts to the defendant carrier. Missouri Pac. R. Co. v. Elmore & Stahl, 377 US 134, 12 L Ed2d 194, 84 Sup Ct 1142. Plaintiff's reliance on cases such as the Sun Insurance Office v. Be-Mac Transp. Co., 132 F2d 535, is misplaced. In order to so rely, the plaintiff must take as a fact not only that "SOU" in the diversion order meant Southern Railway Company, but also that the Southern Railway Company had actually come into possession of the car in question. Only if those issues were proven could the question of agency arise.

The judgment of the Circuit Court of Cook County, First Municipal District, is reversed.

Reversed.

DRUCKER, P. J. and ENGLISH, J., concur.