COOPER JARRETT, INC., Appellant, v MELODY STATIONERY, INC., Respondent.

Third Department, July 8, 1976

*George A. Roland* for appellant.

*Rosenblum & Leventhal (Sanford Rosenblum* of counsel), for respondent.

HERLIHY, J. The action herein was commenced by the plaintiff on or about October 4, 1974 by a complaint which alleged "[t]hat the defendant owes plaintiff the sum of * * * ($189.99) * * * for goods sold to and accepted by defendant". The defendant's amended answer specifically denied the above-quoted allegation and asserted two counterclaims and/ or affirmative defenses: (1) that on July 5, 1973 the plaintiff had negligently and improperly delivered and stored certain goods to or upon its premises causing damage to its business and a loss of profits; and (2) that the goods delivered and stored by plaintiff were damaged by the plaintiff's negligence. The answer demanded the sum of $50,000.

The plaintiff responded to the answer with an amended reply which dénied the allegation of negligence and as a *single* affirmative defense asserted that it was a common carrier subject to the control of Interstate Commerce Commission; that a uniform bill of lading had been published; that the bill of lading requires that a written claim for damages must be made within nine months after delivery of merchandise; and, that the defendant's counterclaim for damage was barred because no written claim or notice was so filed within nine months. The appellant also requested a bill of particulars.

The defendant's bill of particulars states: that there was no contract between the parties for transportation of merchandise; that a bill of lading or other shipping document was issued by plaintiff when the merchandise was delivered to it; that the plaintiff had negligently and improperly delivered and stored the goods on defendant's premises and had damaged the goods in shipment, delivery, and storage; that the injury occurred on June 29, 1973; that notice of claim was given to plaintiff's representative on June 29, 1973 and in July of 1973 when plaintiff's representative inspected the damage; that the notice was oral and in writing; and that the amount of damages claimed ($50,000) is based on damage to the goods received and loss of business and income thereafter.

Attached to the bill of particulars is an invoice dated July 9, 1973 from Boise Cascade Office Supply Division showing that certain goods were shipped by *it* to defendant on June 29, 1973 and that the goods were shipped "collect". Also attached was a freight bill apparently issued by plaintiff which lists

Boise Cascade as the shipper and the defendant as the consignee and reciting that the transportation charges are $189.99.

The record also contains two damage inspection reports which both clearly recite that they are not claims for damages.

The plaintiff moved for summary judgment dismissing the counterclaims and granting judgment in its favor for $189.99 upon the foregoing papers and documents upon the ground that, as a matter of law, claims for damages must be filed in writing within nine months of delivery of the goods and since no such claim was made in that time, the counterclaims were barred.

The plaintiff asserts that so much of the answer as includes a demand for damages because of damage to the goods while in the possession of the plaintiff is barred by virtue of the failure to make a proper claim within nine months after the delivery of the merchandise* and that Special Term erred in holding that a counterclaim could be asserted *(Gooch v Oregon Short Line R.R. Co.,* 258 US 22; *Southern Pacific Co. v Stewart,* 248 US 446; *Boston & Maine R.R. v Hooker,* 233 US 97; *Adams Express Co. v Croninger,* 226 US 491). As noted by Special Term, Part 1005 of the Interstate Commerce Commission Regulations (49 CER Part 1005) as to the filing of claims and the minimum requirements thereof prohibit a carrier from "voluntarily" paying a claim unless there is a proper filing of a written claim. The bill of lading merely requires a written claim.

Whether or not the regulations are intended to merely restrain voluntary payment, they are part of a regulatory

---

\* Section 2 (b) of the Uniform Straight Bill of Lading as set forth in plaintiff's brief reads as follows:

"As a condition precedent to recovery, claims must be filed in writing with the receiving or delivering carrier, or carrier issuing this bill of lading, or carrier on whose line the loss, damage, injury or delay occurred, or carrier in possession of the property when the loss, damage, injury or delay occurred, within nine months after delivery of the property (or, in the case of export traffic, within nine months after delivery at port of export) or, in case of failure to make delivery, then within nine months after a reasonable time for delivery has elapsed; and suits shall be instituted against any carrier only within two years and one day from the day when notice in writing is given by the carrier to the claimant that the carrier has disallowed the claim or any part or parts thereof specified in the notice. Where claims are not filed or suits are not instituted thereon in accordance with the foregoing provisions, no carrier hereunder shall be liable, and such claims will not be paid."

scheme which imposes liability upon a common carrier issuing a bill of lading and are supplementary thereto so as to control the issue presented in this case.

The requirement of a *written* claim or notice of claim has been consistently upheld by the Federal courts and mere oral notice will not suffice when the bill of lading or contract of shipment requires writing (see, e.g., *St. Louis, Iron Mountain & So. Ry. Co. v Starbird,* 243 US 592). It is not disputed by plaintiff that defendant gave ample oral notice of its claim for damages.

The issue is whether or not two documents entitled "damaged merchandise inspection" and specifically reciting that they are "not a claim" are sufficient to be written notice of a claim. Upon the face of those documents it is printed as follows: "This report is merely a statement of facts and not an admission or denial of liability by the carrier. Upon your request the carrier will forward necessary instructions to properly present any claim you may have."

The Interstate Commerce Commission's regulations provide that there must be a communication in writing; asserting liability for a cause; and, claiming a determinable amount of money. The further specifications provide that "inspection reports issued by carriers or their inspection agencies * * * shall, standing alone, not be considered by carriers as sufficient to comply with the minimum * * * requirements". (49 CFR 1005.2 [c].)

In this particular case the so-called inspection reports are clearly more than a mere compilation of facts by the plaintiff and/or its agent as it is signed by the defendant as "consignee" at the bottom thereof and has a provision therein for the consignee's "suggested disposition of freight". This latter provision is made expressly subject to "carrier approval". The first report had a suggestion for replacement and the second report suggested that the items be scrapped.

It will be difficult to assume that the consignee would have requested replacement in the absence of an implicit charge of liability on the part of the carrier, accordingly, the inspection reports herein satisfy the requirement that it assert liability on the part of the carrier (cf *Secretary of Agriculture v United States,* 350 US 162). There can be no doubt that the reports specify facts sufficient to identify the shipment and the goods involved and the only question would be whether or not there is an adequate claim for a determinable amount of money. In

this regard, the shipper "Boise Cascade" was identified on the reports, there is identification of the goods by description and serial or style numbers and the remedy requested was replacement. The document is satisfactory to be for a determinable amount of money, i.e., replacement cost to the carrier. In this case the affidavit on behalf of plaintiff concedes that an oral complaint as to damage was made by the defendant and the reports go beyond merely inspecting the goods and indicate that the carrier by soliciting the defendant's suggested disposition of the freight will, based upon the reports, give approval or disapproval to a demand being made. In the present case, the documents go beyond a mere inspection report and the documents are not excluded as a claim since the inspection portion does not "stand alone".

It is notable that the regulations do not prescribe any particular form for a claim and simply require a communication in writing. The defendant was not making or furnishing the inspection report and accordingly, the printed portion reciting that it is "not a claim" will be construed to mean only insofar as the carrier is concerned is it not a claim. The carrier asserted in the printed portion thereof that the form was neither an admission nor denial of liability by the carrier, but it does not assert that the consignee could not thereby satisfy the requirements of the regulation. In sum, regardless of the language specifying that the reports are "not a claim", for purposes of the regulations, they were sufficient to meet the minimum requirements of a claim and the plaintiff by virtue of the regulations was obligated to proceed to either accept or deny the claim. Indeed, the very words of the form used herein reflect that the specification of the consignee as to the disposition of the freight was to evoke further action by the plaintiff ("pending carrier approval").

The order should be affirmed, without costs.

KOREMAN, P. J., SWEENEY, KANE and MAHONEY, JJ., concur.

Order affirmed, without costs.