55 CCPA

**Application of Ernst Johan Jens HENRIKSEN.**

**Patent Appeal No. 8107.**

United States Court of Customs and Patent Appeals.

July 3, 1968.

Bacon & Thomas, Washington, D. C. (Leo A. Rosetta, Washington, D. C., of counsel), for appellant.

Joseph Schimmel, Washington, D. C., for Commissioner of Patents.

John E. Hanrahan, Stamford, Conn. (Armand Cifelli, Bridgeport, Conn., Evans Kahn, Stamford, Conn., Joseph Levinson, Chicago, Ill., William P. Spielman, Washington, D. C., of counsel), amicus curiae.

Anthony P. DeLio, New Haven, Conn., Donald Brown, DeLio & Montgomery, New Haven, Conn., amici curiae.

Jacobs & Jacobs, Washington, D. C., amicus curiae.

Before WORLEY, Chief Judge, and RICH, SMITH, ALMOND and KIRKPATRICK*, Judges.

SMITH, Judge.

The sole issue presented by this appeal is the interpretation of 35 U.S.C.

* Senior District Judge, Eastern District of Pennsylvania, sitting by designation.

§ 120. Simply stated, the question is whether the language of section 120 *limits* an applicant to the benefit of the filing date of the second preceding application in a chain of copending applications. We reverse the decision of the Patent Office Board of Appeals,[1] 154 USPQ 53 (Pat.Off.Bd.App.1966).[2] We hold here that under that section of the statute, in view of its long-standing interpretation by the Patent Office and the patent bar, there is no statutory basis for fixing an arbitrary limit to the *number* of prior applications through which a chain of copendency may be traced to obtain the benefit of the filing date of the earliest of a chain of copending applications, provided applicant meets all the other conditions of the statute.

The issue arises in an appeal from the decision of the board affirming the examiner's rejection of all of the claims in appellant's application[3] as fully met under 35 U.S.C. § 102(b) by appellant's *own* prior-issued patent.[4] The examiner had stated that the appellant "is statutorily barred from obtaining a patent on the instant claims under 35 U.S.C. § 102 (b)"[5] because the subject matter here appealed is completely disclosed in the patent and because appellant can claim only the benefit of the filing date of an application twice-removed in time from appellant's application, relying on what seems to us to be an unwarranted and wholly novel interpretation of that statute.

## The Subject Matter of the Appealed Claims

The appealed claims relate to ball point pens, and, in particular, to the nature of the "follower plug" at the surface of the ink column of such pens. The claims set forth the nature of the composition of the follower plug in several ways, and also contain various details of the pen construction. Before the board, appellant apparently conceded that the constructional details in the claims are not material to this issue and maintains that position here, stating that the "subject matter of the claims standing finally rejected is of no moment in the present appeal". Thus, no further description of the subject matter or the claims is necessary.

## Background

The issue, as stated by the board, is the effective date to which the claims of the present application can be entitled as a matter of law. 154 USPQ at 54. Before the board, the appealed application was urged to be entitled to the date of the application filed October 26, 1946, on which the Henriksen patent issued. The examiner contended that appellant could only be entitled to an effective filing date of February 12, 1959, from which he concluded that the claims here appealed were barred under 35 U.S.C. § 102(b).

1. Because of the nature of the legal issues raised before the board, the appeal was heard and considered by an augmented panel of the Board of Appeals consisting of Messrs. Federico, Friedman, Kreek, Dracopoulos, Keely, Brewrink, Magil, Rosa and Mangan, Examiners-in-Chief. Mr. Federico wrote the opinion of the board. Mr. Magil, with whom Messrs. Dracopoulos and Mangan joined, dissented on the issue here before the court.

2. Noted in 36 Geo.Wash.L.Rev. 468 (1967) and 17 Cath.U.L.Rev. 355 (1968).

3. Claims 1 through 16 of serial No. 384,716, filed July 23, 1964. No claims have been allowed. For the position of this application in the chain, see p. 255, infra.

4. U.S. Patent No. 2,678,634, issued May 18, 1954. See the chart on p. 255, infra.

5. A person shall be entitled to a patent unless—
   * * * * *
   (b) the invention was patented or described in a printed publication in this or a foreign country or in public use or on sale in this country, more than one year prior to *the date of the application* for patent in the United States, * * *. [Emphasis added.]

## The Filing Sequence of the Chain of Applications

The appealed application is the last in the following series of continuation-in-part applications:

A. 705,927 Filed October 26, 1946, issued May 18, 1954, as U.S. Patent No. 2,678,634. This patent forms the basis for the statutory bar under the decision of the board.

B. 421,934 Filed April 8, 1954. The application was stated to be a continuation-in-part of application A and was abandoned April 29, 1958.

C. 551,363 Filed December 6, 1955. The application was stated to be a continuation-in-part of application B, and also referred to application A. It was abandoned February 26, 1959.

D. 658,280 Filed May 10, 1957. The application was stated to be a continuation-in-part of application B and also referred to application A. It was abandoned May 20, 1960.

E. 792,824 Filed February 12, 1959. The application was stated to be a continuation-in-part of application C and referred to both applications A and B. It was abandoned June 6, 1962.

F. 199,829 Filed June 4, 1962. The application was stated to be a continuation-in-part of application E and referred to applications A, B, and C. It was abandoned October 26, 1964.

G. 384,716 Filed July 23, 1964. The application is stated to be a continuation-in-part of application F and refers to each of the other applications in the chain. This is the application on appeal.

The board observed, and the appellant here agrees, that while seven applications are included in the above list, only a chain or sequence of six applications is involved. It can be seen that applications B, C, and D were copending at the same time and that applications C, D, and E were also copending at the same time. Thus, either application C or D may be omitted while still preserving a continuous chain of copendency of the common subject matter from application G to application A.

## The Rejection

While the examiner, in his Answer, promulgated several grounds of rejection, he limited the issues on appeal to the board to two, i. e., the interpretation of section 120, and "double patenting." The decision of the board refused to sustain the second, i. e., whether the appealed claims raised an issue of "non-patentable distinction" (double patenting) over the claims of appellant's patent, reversing the examiner in this regard.

The majority of the board affirmed the examiner with respect to the issue under section 120. They stated, 154 USPQ at 55:

> The issue as presented by the Examiner is that a series of cases, retaining the filing date of the first in the sequence in a situation of this kind can be no longer than three applications. In other words, an application may be entitled to the filing date of a parent case or a grandparent case, but not any great grandparent or great, great, etc. grandparent case. There are only two alternatives involved in view of the statutory reference to a series of three applications; either an applicant is limited to a maximum of three cases in a series or there is no limit whatsoever to the number of applications which could be filed in sequence, retaining the benefit of the filing date of the first application in the series for the last one. As has been stated, the Examiner has

presented an analysis of the language of Section 120.

We have carefully studied the language of Section 120 and agree with the position of the Examiner.

The board discussed in detail the reasons why it believed that a literal reading of section 120 led to the conclusion that the law permitted claiming only the benefit of a sequence of two or three applications and no more. We shall refer to those reasons as this opinion develops.

## The Statute

■ 35 U.S.C. § 120 is here reproduced, in clauses denoted by letters for ease of understanding. In so doing, we caution that the statute must be read as a whole rather than as a series of discrete phrases. That section provides:

A. An application for patent for an invention disclosed in the manner provided by the first paragraph of section 112 of this title in an application previously filed in the United States by the same inventor shall have the same effect, as to such invention, as though filed on the date of the prior application,

B. *if* filed before the patenting or abandonment of or termination of proceedings on the first application

C. *or* on an application similarly entitled to the benefit of the filing date of the first application

6. The application states:
This application is a continuation of my copending application Serial No. 199,829, filed June 4, 1962, [F] which was a continuation-in-part of my copending application Serial No. 792,824, filed February 12, 1959, [E] which was a continuation-in-part of Serial No. 551,363, filed December 6, 1955, [C] which in turn is a continuation-in-part of Serial No. 421,934, filed April 8, 1954, [B] the latter being a continuation-in-part of Serial No. 705,927, filed October 26, 1946 (now Patent No. 2,678,634) [A]. [The bracketed letters refer to the chart, p. 255, supra.

D. *and* if it contains or is amended to contain a specific reference to the earlier filed application. [Emphasis added.]

Clause D has been satisfied since the appealed application (G) specifically refers to applications F, E, C, B and A.[6] See Hovlid v. Asari, 305 F.2d 747 (9th Cir. 1962). There is no question of the applicability of clause A. It is clear that, irrespective of the filing date to which appellant may be entitled, no issue is raised as to the compliance of any "application previously filed" with the provisions of the first paragraph of section 112.[7]

## Opinion

35 U.S.C. § 120 does not by its express terms unequivocally prohibit obtaining the benefit of an earlier filing date in the United States by reason of the numerical lineage of the application whose filing date is relied on. Therefore, in order to determine whether such a limitation implicitly exists, it is necessary to resort to various interpretive aids. The foremost illuminant on the meaning which Congress intended for the statute is the written legislative history of the Act. Although that legislative history is somewhat inconclusive in this instance, we set it out in detail for what help it provides.

### Legislative History of 35 U.S.C. § 120

The Patent Act of 1952 was given great impetus by the publication on Janu-

7. 35 U.S.C. § 112, first paragraph, provides:
The specification shall contain a written description of the invention, and of the manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains, or with which it is most nearly connected, to make and use the same, and shall set forth the best mode contemplated by the inventor of carrying out his invention.
Mr. Federico was also of the view that a new ground of rejection should have been made based on lack of sufficient disclosure in the first application to support any of the appealed claims.

ary 10, 1950 [8] of a Committee Print entitled "Proposed Revision and Amendment of the Patent Laws," characterized as a "Preliminary Draft with Notes" printed for the use of the Committee on the Judiciary of the House of Representatives. The draft was intended to serve "as the basis for the expression of opinions." [9]

Section 35 of that draft related to the same topic as section 120 of the present statute.[10] While the board opinion characterized the language of that section as merely referring to two applications, and "as written would only seem to permit reliance on a single prior copending application for an earlier date," 154 USPQ at 59 n. 3, we disagree that any numerical limitation is implied. What is stated, as we read the draft is the requirement of copendency between "an application" and "an application previously filed" or "the prior application." This is found in the requirement that "the later application must be filed before "the prior application" is patented or abandoned or

proceedings thereon terminated. Nothing in this language restricts the number of applications in a chain so long as the applications are copending.

The preliminary draft was considered by various committees. Thereafter, the first bill, H.R.9133, 81st Cong., 2d Sess. (1950), was introduced by Representative Bryson on July 17, 1950. Section 119 of that bill [11] is the predecessor of section 120 of the current act and seems to require, with respect to copendency, *only* that the disclosure of the later application be continuously pending in the Patent Office since the date of the prior application. No restriction on the number of applications which may be so involved is stated.

The next bill, H.R. 3760, 82d Cong., 1st Sess. (1951), a revision of H.R. 9133, was introduced April 18, 1951. Section 120 of H.R. 3760 [12] is very similar to present section 120. In this version, the reference to continuous pendency of the subject matter has been omitted and reference is made to the patenting, abandon-

8. For further background on the genesis of the Act, see Rich, Congressional Intent—Or, Who Wrote the Patent Act of 1952?, Patent Procurement and Exploitation (BNA–1963), p. 61; see also Harris, Some Aspects of the Underlying Legislative. Intent of the Patent Act of 1952, 23 Geo.Wash.L.Rev. 658 (1955).

9. Foreward to that draft at page III.

10. § 35. *Date of continuing application*
An application for patent for an invention disclosed in the manner required by section 28 [now § 112] of this title in an application previously filed in the United States by the same inventor shall have the same effect as though filed on the date of the prior application, if the later application is filed before the prior application is patented or abandoned, or proceedings thereon terminated, and if the applicant claims the benefit of the filing date of the prior application in said later application. The term of the patent granted on said later application shall not extend beyond the date of expiration of the patent if any, which may be granted on the earlier application.

11. § 119. *Benefit of earlier filing date in the United States*
An application for patent for an invention disclosed in the manner provided

by section 112 of this title in an application previously filed in the United States by the same inventor shall have the same effect as to such invention, as though filed on the date of the prior application, if, and to the extent that, the disclosure of the later application has been continuously pending in the Patent Office since the date of the prior application and if the later application contains a specific reference to the earlier filed application.

12. § 120. *Benefit of earlier filing date in the United States*
An application for patent for an invention disclosed in the manner provided by the first paragraph of section 112 of this title in an application previously filed in the United States by the same inventor shall have the same effect, as to such invention, as though filed on the date of the prior application, if filed before the patenting or abandonment of or termination of proceedings on the first application *or any* application similarly entitled to the benefit of the filing date of the first application and if it contains or is amended to contain a specific reference to the earlier filed application. [Emphasis added.]

ment of or termination of proceedings on the first application or *any* application *similarly* entitled to the benefit of the filing date of the first application. Hearings were held on this bill.[13]

The Committee next reported an amended bill, H.R. 7794, 82d Cong., 2d Sess. (1952), which became enacted as the 1952 Patent Act. As noted by the board, 154 USPQ at 59 n. 3, two changes were made in section 120: (1) *"any"* was changed to "an" in referring to applications similarly entitled to the benefit of the filing date of the first application, and (2) "on" was inserted.

The Committee Report, H.R.Rep.No. 1923, 82d Cong., 2d Sess. (1952), "Report from the Committee on the Judiciary, House of Representatives, to accompany H.R. 7794," contains the statement, at page 7:[14]

> Sections 120 and 121 express in the statute certain matters which exist in the law today but which had not before been written into the statute, and in so doing makes some minor changes in the concepts involved.

The Revision Notes, however, are more terse, id. at page 20:

*Section 120—New Section*

> This section represents present law not expressed in the statute except for the added requirement that the first

application must be specifically mentioned in the second.

In the Senate Report, S.Rep.No.1979, 82d Cong., 2d Sess. 6, (1952) the same language was used as was used in House Report No. 1923 in referring to the bill for both the report portion and for the reviser's notes.

It should be borne in mind in reading the phrase "on an application," which is in the singular, that this codification of Title 35 of the United States Code, like other recently codified titles, was written with 1 U.S.C. § 1 in mind which provides for the construction of such singular expressions to include the plural.[15] So read, "an application" does not necessarily refer only to a single application.

From the foregoing, it is clear from the express words of the committe reports and from the reviser's notes that the practice prior to the 1952 Act is pertinent. We thus turn to whatever authorities may exist which may bear upon that issue.

*Practice Relating to Obtaining the Benefit of an Earlier Filing Date Prior to 1953*

Appellant argued before the board that the law before the 1952 Patent Act was that there was no limit in a chain-of-applications situation with respect to the

---

13. The statement of Mr. P. J. Federico, speaking as a drafter of the bill with the consent of the Commissioner of Patents on section 120 of H.R. 3760 was:

> Sections 120 and 121 express in the statute certain things which exist in the law today that have not been written into the statute, and in so doing make some changes in the concepts involved.

See "Hearings before Subcommittee No. 3 of the Committee on the Judiciary, House of Representatives, Eighty-Second Congress, First Session on H.R. 3760," 82d Cong., 1st Sess., ser. 9 at 39 (1951). The Report of the Laws and Rules Committee of the American Patent Law Association on H.R. 3760 stated, id. at 45:

> Section 120 codifies the present practice relative to the right to the filing

date of an earlier application for common subject matter in a continuation application.

14. This virtual copy of Mr. Federico's testimony would seem to indicate that, despite the change in wording in this draft, no change in the operation of the statute as previously formulated was intended. It may thus be validly concluded, it would seem, that the change from "any" to "on an" was not legally significant with respect to the legislative intent as bearing on the fact situation of this appeal.

15. 1 U.S.C. § 1 provides:

> \* \* \* In determining the meaning of any Act or resolution of Congress, words importing the singular number may extend and be applied to several persons or things; words importing the plural number may include the singular \* \* \*.

last one obtaining the benefit of the filing date of the first in the series and that the 1952 Patent Act intended no change in the law in this respect. At the hearing before the board, appellant stated that diligent efforts had been made to find cases dealing with the present problem but that none had been found. 154 USPQ at 56. The board invited appellant to submit any additional material which might be found, and a supplemental memorandum was filed. Ibid.

The board distinguished the cases cited by appellant purportedly to show that sequences of more than three applications had been involved in litigation.[16] Appellant advances no such case authority here, other than Ex parte Harris, 55 USPQ 329 (Pat.Off.Bd.App. 1942). In that case Harris filed an application as the last application of a chain of four successively copending cases and referred to each of the prior applications. The examiner rejected Harris' claims on prior art having an effective date subsequent to the filing date of the first application of the Harris series but prior to the filing date of later cases of that series. Harris contended that he was entitled to the filing date of the first case of the series of four, which would render the prior art ineffective against him, and that he could present claims to disclosed subject matter at any time. The examiner, however, finally rejected Harris' claims, referring to the matter of delay in presenting claims, and the case was appealed to the Patent Office Board of Appeals. In rendering its decision, the board ruled that the subject matter involved in at least some of Harris' claims on appeal was disclosed in the first application of the series, id. at 331, and, with reference to Harris' contention

that he was entitled to the filing date of his first case the board stated, ibid:

It is believed that applicant's position is correct and this ground of rejection will not be affirmed.

Thus, the Patent Office herein has acted in a manner inconsistent with at least one prior decision of the board which, in our view, evidences the practice prior to January 1, 1953 wherein an applicant was not limited to a chain of three copending applications for the purpose of claiming an early effective filing date.

The solicitor admits that the decision in the *Harris* case permitted an applicant to rely upon a chain of four applications, and further admits that decision is inconsistent with the decision on appeal. He points out that the decision of the board here indicates that no decision was known where it was held that there was no limit to the number of successive applications. Apart from the fact that the Board of Appeals in the *Harris* case was not faced with the problem of construing specific statutory language, since there was none, the solicitor also argues that a single instance in which a chain of more than three applications was recognized is not sufficient to prove that a chain of more than three applications was the law prior to that date. We cannot agree with that position when all of the factors involved in reaching our decision are considered.

The board dismissed the statements of certain authors with the observations that they give no actual authority for their "inferences of unlimitedness." 154 USPQ at 57. The board expressed "no doubt that some persons may have believed that there was no limit." Ibid. The references there referred to were: 1 Rivise and Caesar, Interference Law and Practice 510; McCrady, Patent Of-

16. Appellant cited Indiana General Corp. v. Lockheed Aircraft Corp., 249 F.Supp. 809, 148 USPQ 312 (S.D.Cal.1966); Merck & Co. v. Olin Mathieson Chem. Corp., 253 F.2d 156 (4th Cir. 1958); and Otto v. Koppers Co., 246 F.2d 789

(4th Cir. 1957). The board pointed out that in the first two cases, only a chain of three applications is involved in tracing the common subject matter while in the last case there is no chain longer than two. 154 USPQ at 56.

fice Practice 68 (4th ed. 1958); 2 Robinson, The Law of Patents 204 (1890); and Glascock and Stringham, Patent Law: Substantive Aspects 108–116 (1943). The dissenting opinion of 3 members of the augmented board, with which we generally agree, completely disagreed with the denigration of those persons who believed that there was no limit to the sequence of consecutive applications. The board's dissent quoted Robinson, op. cit. supra, and 1 Rogers, The Law of Patents 21 (1914).[17] We think that these references at the very least provide additional support for the interpretation here contended for by appellant.

The absence of case law to the contrary prior to 1953 is still another factor to be considered in concluding that the decision of the board was erroneous. Insofar as we can determine from our independent research, and from the fruits of the research of the parties and the able briefs of amici, the case law contains no limitations on the transmission of the effective date of a first filing through a chain of copending applications.

The decisions of the Supreme Court do not prescribe a result contrary to ours. From as early as Godfrey v. Eames, 68 U.S. 317, 17 L.Ed. 684 (1863), to Crown Cork & Seal Co. v. Ferdinand Gutmann Co., 304 U.S. 159, 58 S.Ct. 842, 82 L.Ed. 1265 (1938) and General Talking Pictures Corp. v. Western Electric Co., 304 U.S. 175, 58 S.Ct. 849, 82 L.Ed. 1273 (1938), the Supreme Court has not seemed to question the right of the later-filed application to rely on an earlier-filed application, nor has it questioned—although the point does not seem to have arisen—the right to rely on more than two successively preceding applications.

No case has been cited to us, decided since the 1952 Act was passed, which leads to the result reached here by the majority of the board.

Turning to the merits of the positions of the parties, the board states, with respect to clause (B) of the statute, supra, that this clause specifies a condition of copendency relating to only two applications. Appellant refers to the examiner's analysis of section 120 and his conclusion that there must be copendency with the current application, so far as clause (B) is concerned, and states that no disagreement exists on that point. Thus, the real question is the proper interpretation of the third clause (C).

According to the decision of the board, the third clause (C) is written in the form of an alternative to the second clause (B), the requirement for copendency, and the decision states that, because of the use of the word "similarly" with the word "or," the previous condition of *two applications* being copending obtains. 154 USPQ at 56. The board's analysis of these clauses is that the section first states that *two applications* must be copending, and then, as an alternative thereto, that there may be *an* intermediate application between the first and the last. Thus, read literally [18]

---

17. 2 Robinson, The Law of Patents 204 (1890) states:
   It is immaterial how many of these substituted applications may be filed or for how long a period such efforts to obtain a patent may be continued. The patent, when granted, will rest on the original application, as represented in its various successors, unaffected by the intermediate conduct of third parties or the current of events, unless some legislative act, embracing it in its provisions, has been passed.
   1 Rogers, The Law of Patents 21 (1914) provides:

* * * and that no number of successive applications indicates an intention to abandon; but that, in reference to the question of abandonment, all such may be regarded as one application, the ones subsequent to the first being known as "continuing" applications.

18. As Judge Learned Hand said in Peter Pan Fabrics v. Martin Weiner Corp., 274 F.2d 487, (2d Cir. 1960): " * * * it is a commonplace that a literal interpretation of the words of a statute is not always a safe guide to its meaning." * * *

the board agreed with the examiner that section 120 necessarily leads to a sequence of only two or three applications, and no more.

Appellant argues that a proper interpretation of section 120 grants to an applicant the benefit of the filing date of any earlier filed application, if the latest application were copending with one entitled to the filing date of that earlier case by virtue of other considerations than direct copendency. To be "similarly" entitled to an earlier date, an application must be for the same invention, must be by the same inventor, and must be filed in the United States, all as set forth in clause (A) of the statute. Appellant submits that the word "similarly," as appearing in section 120, refers to the prerequisites of clause (A). Appellant also submits that an application is "similarly" entitled to the filing date of the earliest case if it meets all the conditions of clause (A) and the subject matter was continuously pending, even though more than one bridging case is present. Thus the third application is entitled to the benefit of the filing date of the first application and the fifth application is "similarly" entitled thereto.

Looking again at clause (A), the statute provides that an application shall have the same effect as though filed on "the date" of a prior application. The statute does not limit the benefits of the Act to the *actual* filing date of that prior copending application but refers broadly to "the date" of the prior application, which appellant submits means the *effective* date of the prior application.

For example, in a chain of applications like that presently involved, even the examiner's interpretation of section 120 unquestionably gives to application C the date of application A as the effective date of application C, that is, October 26, 1946. Appellant submits that "the date" of the prior application, when later considering application C as the "prior" application referred to in clause (A), is its *effective* date, or October 26, 1946.

Thus, "the date" of application C (October 26, 1946) is the date to be considered in any further application of section 120 to the chain of applications listed hereinabove. Then, in considering applications C, D, and E, even the examiner's interpretation of the section would award to application E the "date" of application C, which has already been shown to be October 26, 1946, which is in fact the date on which application A was filed in the Patent Office. By similar reasoning, it appears clear that the language of section 120 can be given a literal construction which will permit application G to claim as its effective filing date the date of October 26, 1946.

We agree with appellant's analysis to the effect that the statute provides no limit to the number of applications that may be copending.

It is worthy of note that the board has not overtly mentioned the relationship of 35 U.S.C. § 120 to the remainder of the Patent Act. 35 U.S.C. § 120 is contained in Chapter 11 of Title 35, entitled "Application for Patent." By its title, section 120 deals with the "Benefit of earlier filing date in the United States." Chapter 10 of the same Act, entitled "Patentability of Inventions," sets forth certain requirements for patentability. 35 U.S.C. §§ 102 and 103 prescribe the conditions for patentability dealing respectively with novelty and the loss of the *right* to patent and with nonobvious subject matter. By the terms of section 102, the application here on the facts of this case is "entitled to a patent unless," under 102(b), the invention was patented in this country more than one year prior to "the date of the application for patent in the United States." By its adjudication concerning what earlier date appellant may gain, the board has circumscribed a meaning of long standing attributed to 102(b). Moreover, the board has also failed to mention what effect it intends its holding to have on interference practice.

The action of the board is akin to a *retroactive* rule change which may have

the effect of *divesting* applicants of valuable rights to which, but for the change in Patent Office position brought about by the board's decision, they were entitled. Nothing appears in the Patent Office Rules of Practice or the Manual of Patent Examining Procedure which sanctions such a result.

Finally, we would express the postscript to this opinion, as did the dissenting opinion of the board, that it is unfortunate that a patent should be granted on an application depending upon another application filed over 20 years ago. However, as the opinion of the board dissenters states, 154 USPQ at 61:

> * * * but the cure for this deplorable state of affairs rests with Congress, not with us. If a restriction is to be imposed, it must be based upon law, legislatively or judicially expressed.

It is our view, as the judiciary, that it is for the Congress to decide, with the usual opportunity for public hearing and debate, whether such a restriction as sought by the board is to be imposed.

The decision of the board is reversed.

Reversed.

WORLEY, Chief Judge, concurs in the result.