**E. W. BOWMAN, INC., a corporation, Plaintiff,**

v.

**NORFOLK AND WESTERN RAILWAY COMPANY, a corporation, and Kirby Transfer and Storage Corporation Incorporated, Defendants.**

Civ. A. No. 75–757.

United States District Court, W. D. Pennsylvania.

Feb. 12, 1980.

Milton D. Margolis, Uniontown, Pa., for plaintiff.

G. Daniel Carney, Thorp, Reed & Armstrong, Pittsburgh, Pa., for Norfolk and W. Ry. Co.

William A. Gray, Wick, Vuono & Lavelle, Pittsburgh, Pa., for Kirby Transfer.

## MEMORANDUM

WEBER, District Judge.

E. W. Bowman, Inc. ("Bowman") filed suit against Norfolk and Western Railway ("Norfolk"), a rail common carrier, and Kirby Transfer and Storage Corp., Inc. ("Kirby"), a motor common carrier, to recover for the loss of a lehr belt in transit. The lehr belt is one part of a glass annealing furnace which Bowman undertook to ship from its Uniontown factory to Owens-Illinois, Inc. in City of Industry, California.

Bowman alleges that pursuant to a bill of lading, Kirby took possession of the furnace at Bowman's Uniontown factory, loaded the property on its trailer, and transported it to Norfolk's Rook Station piggy-back ramp. Norfolk transported the goods on its line to Genex Terminal, Chicago, Illinois. At the Genex Terminal the goods were further consolidated and carried by truck tractor to the Sante Fe Station in Chicago for further shipment to Silver Fleet, Inc., a local Los Angeles trucking firm. Silver Fleet made the final delivery to Owens-Illinois, Inc. in City of Industry, California. The lehr belt was missing upon arrival of the shipment at Owens-Illinois.

Defendants Norfolk and Kirby have filed separate motions for summary judgment. Norfolk supports its motion by arguing that Kirby issued a through bill of lading and, therefore, Norfolk, as a connecting carrier is not liable to Bowman under the Carmack Amendment. Norfolk also contends that Bowman's lawsuit is time-barred by the limitations of Section 2(b) of the Uniform Domestic Straight Bill of Lading[1] since Bowman failed to file suit against Norfolk within 2 years and 1 day of Norfolk's denial of Bowman's claim of loss.

Defendant Kirby moves on the grounds that it issued a straight bill of lading for goods consigned to Fort Pitt Consolidators in Pittsburgh and no loss occurred during this transport. In the alternative, Kirby argues that the plaintiff is barred for failure to file a claim within the time limitations set forth in the uniform bill of lading.

---

1. Section 2(b) of the Uniform Domestic Straight Bill of Lading is applied here pursuant to the express provision contained in the bill of lading issued by Kirby.

At the outset, we shall address the arguments of both defendants that the plaintiff's suit is time-barred by Section 2(b) of the Uniform Domestic Straight Bill of Lading.[2]

The bill of lading issued by Kirby recites: "every service to be performed hereunder shall be subject to all the terms and conditions of the Uniform Domestic Straight Bill of Lading set forth (1) in Official, Southern, Western, and Illinois Freight Classifications in effect on the date hereof, if this is a rail or a rail-water shipment, or (2) in the applicable motor carrier classification or tariff if this is a motor carrier shipment." Plaintiff's Complaint in Assumpsit, Exhibit A

Bowman and Kirby argue that Kirby accepted the 3 piece annealing furnace for "through transportation", or interstate transportation, and issued a through bill of lading which would control the entire transport or shipment of the goods including carriage over Norfolk's lines. Kirby alleges that it issued a straight bill of lading for carriage of the goods from Uniontown to Pittsburgh. We shall consider this issue now because the controlling nature of the bill of lading issued by Kirby over the entire course of shipment must be decided before we can apply the provisions of Kirby's bill of lading to dealings between Norfolk and Bowman.

■ We hold that Kirby issued a through bill of lading providing for the shipment of the glass annealing furnace from Uniontown, Pennsylvania to City of Industry, California through several connecting carriers, including Norfolk. When Kirby took possession of the goods at Bowman's Uniontown factory, the goods had actually "started in the course of transportation to another State." *Texas & New Orleans Railroad Co. v. Sabine Tram Co.*, 227 U.S. 111, 123, 33 S.Ct. 229, 57 L.Ed. 442 (1913); *Bigelow v. Old Dominion Copper Co.*, 225 U.S. 111, 125, 32 S.Ct. 641, 56 L.Ed. 1009 (1912).

The bill of lading issued by Kirby, which is attached to its motion for summary judgment as Exhibit 1, recites that property described therein was consigned to "Fort Pitt Consolidators, Inc. (For Consolidation). Destination Pittsburgh State PA" "Route" is scratched out and the bill of lading bears the wording "For Further Consolidation by Genex Terminal Co., Chicago, Ill." The bill of lading also carries the notation within the chart for description of property

"Ship to: Silver Fleet, Inc.
        4520 Maywood Avenue
        Los Angeles, California

For Delivery to: Owens Illinois, Inc.
        200 South Ranch Road
        City of Industry, California 91744"

City of Industry is noted on the bill as being the final destination of the goods. We believe that the essential character of the commerce here is interstate—Pennsylvania to California—and that this should control even though "Pittsburgh" is indicated as the "Destination".

"It makes no difference . . . that the shipments of the products were not made on through bills of lading . . ." *Southern Pacific Terminal Company v. Interstate Commerce Commission and Young*, 219 U.S. 498, 527, 31 S.Ct. 279, 288, 55 L.Ed. 310 (1911).

Although Kirby's bill of lading is arguably not a "through bill of lading" strictly on its face, we are of the opinion that Kirby received the goods for interstate transportation and the goods had begun on a continuous carriage to California.

The bill of lading issued by Kirby, therefore, is the contract of shipment and governs the entire transportation. *Missouri, Kansas and Texas Railway Co. v. Ward*, 244 U.S. 383, 387, 37 S.Ct. 617, 619, 61 L.Ed. 1213 (1913); *St. Louis, Iron Mountain & Southern Railway Co. v. Starbird*, 243 U.S. 592, 604, 37 S.Ct. 462, 467, 61 L.Ed. 917 (1917). We shall apply the provisions of Kirby's bill of lading to dealings between Norfolk and Bowman.

---

**2.** Both defendants pleaded the affirmative defense that plaintiff's lawsuit is barred by the applicable statute of limitations in their answers.

The Uniform Domestic Straight Bill of Lading adopted by Carriers in Official, Southern, Western and Illinois Classification territories contains the special provision ("Section 2(b)"):

Sec. 2(b)   As a condition precedent to recovery, claims must be filed in writing with the receiving or delivering carrier, or carrier issuing this bill of lading, or carrier on whose line the loss, damage, injury or delay occurred, within nine months after delivery of the property (or, in case of export traffic, within nine months after delivery at port of export) or, in case of failure to make delivery, then within nine months after a reasonable time for delivery has elapsed; and suits shall be instituted against any carrier only within two years and one day from the day when notice in writing is given by the carrier to the claimant that the carrier has disallowed the claim or any part or parts thereof specified in the notice.   Where claims are not filed or suits are not instituted thereon in accordance with the foregoing provisions, no carrier hereunder shall be liable and such claims will not be paid.   Henson and Davenport, *Uniform Laws Annotated, Uniform Commercial Code Forms and Materials*, § 7–301, Form 1, Uniform Straight Bill of Lading, p. 553.

Section 2(b) bars plaintiff's lawsuit against Norfolk, which lawsuit is founded on the common law liability of a connecting carrier for loss occurring on its own line.[3]

Bowman filed its claim against Norfolk on February 24, 1972 for $13,154.00 for loss of the lehr belt. Dicks' Deposition Exhibit 8.   By letter of August 10, 1972, Norfolk denied Bowman's claim stating

"Since our records show a clear delivery of the trailer on the original move from Rook, Pa. to Chicago, Ill. and no record of the trailer receiving any rough or unusual handling in movement over our rails, we must advise *your claim for shortage is declined*." (emphasis added)   Answer of Defendant Norfolk, Exhibit B.

Bowman, through its General Sales Manager Charles E. Dicks, again wrote Norfolk on May 25, 1973 arguing that "no claim of rough or unusual handling has been made. The question is not that damage occurred during shipment but that material is totally and completely missing."   Dicks' Deposition Exhibit 10.

On May 17, 1973, H. E. Griffin, a claim freight agent for Norfolk, wrote Bowman and clearly stated:

"due to the fact we hold no record of this trailer receiving any rough or unusual handling in movement over our rails, we must reiterate our decision as outlined in our letter of August 10, 1972 and consider this claim properly declined as filed." Dicks' Deposition Exhibit 9.

Bowman persisted, writing Norfolk once again on August 29, 1973

"I trust you will review this claim again. . . ."   Dicks' Deposition Exhibit 13.

■   Bowman's argument is that the 2 year and 1 day period did not begin running on August 10, 1972.   Bowman contends that Norfolk's letter of August 10, 1972 rejecting Bowman's claim lacked "clear finality" and that Bowman was only put on notice of Norfolk's rejection of its claim through subsequent correspondence, in particular, Norfolk's letter of May 17, 1973.   We are not persuaded by this argument.   Although both parties cite cases in support of their respective arguments, we believe the various documents referred to above require a finding that Norfolk gave Bowman clear notice in its August 10, 1972 letter that it had rejected Bowman's claim for loss of the lehr belt.

On May 15, 1975, Bowman filed suit against Norfolk in the Court of Common Pleas of Fayette County, Pennsylvania. Bowman's suit against Norfolk was not filed timely and, therefore, will be dismissed in accordance with the time limitations contained in the bill of lading.

---

3.   We are accepting here Bowman's argument in its Response to Norfolk's Motion for Summary Judgment that Norfolk is not liable to

Bowman by virtue of the Carmack Amendment but on a theory of negligent performance of a contract.

Bowman's suit against Kirby is founded on the Carmack Amendment. The amendment provides that the initial and delivering carriers are liable for any loss of or damage to property accepted for interstate transportation caused by them or any of the succeeding or preceding connecting carriers. 49 U.S.C. § 20(11).

The relevant portion of the Carmack Amendment states:

"That it shall be unlawful for any such receiving or delivering common carrier to provide by rule, contract, regulation or otherwise a shorter period for the filing of claims than nine months, and for the institution of suits than 2 years, such period for institution of suits to be computed from the day when notice in writing is given by the carrier to the claimant that the carrier has disallowed the claim or any part or parts thereof specified in the notice  .   .  .." 49 U.S.C. § 20(11).

On advice from their insurance underwriters, Bowman submitted a claim to Kirby for the lost lehr belt on December 26, 1973. Bowman admits that Kirby delivered the goods, including the lehr belt, to Norfolk at its Rook Station ramp on January 7, 1972. The bill of lading provides for a 9 month period in which to file claims for loss or damage:[4]

"claims must be filed  .   .   . within nine months after delivery of the property  .   .   . or in case of failure to make delivery, then within nine months after a reasonable time for delivery has elapsed.  .   .   ."

Bowman's claim for loss was filed with Kirby 23 months after delivery or, if we assume no delivery was made by Kirby, long after 9 months had lapsed after a reasonable time for delivery. Bowman's claim against Kirby was not timely and Kirby, therefore, is not liable to Bowman for its loss.

---

4. Although the bill of lading recites that the provisions of the Uniform Domestic Straight Bill of Lading adopted by Carriers in Official, Southern, Western and Illinois Freight Classification shall apply in the case of a rail shipment and the applicable motor carrier classification and tariff shall apply in a motor carrier shipment, we believe the motor carrier classifications and tariff govern such matters as freight charges, weights, licensing, etc. and do not provide any time limits in which to file claims and suits for loss of goods in transit. Since the Carmack Amendment forbids any interstate carrier from limiting the period for filing claims to less than 9 months and since we do not believe that Kirby would not provide in a contract with a shipper for a time-bar to the filing of claims against it (it is in the carrier's best interest to limit its liability), we are of the opinion that the 9 months limitation on the filing of claims contained in Section 2(b) of the domestic straight bill of lading prescribed by the Interstate Commerce Commission and in Section 2(b) of the Uniform Domestic Straight Bill of Lading adopted by carriers in Official, Southern, Western, and Illinois Classifications applies here.