**MARINE OFFICE OF AMERICA CORPORATION, as Subrogee of Gomiya (U.S.A.), Inc., Plaintiff,**

v.

**NYK LINES, et al., Defendants.**

No. 84 C 2207.

United States District Court, N.D. Illinois, E.D.

July 26, 1985.

On Motion for Reconsideration Nov. 19, 1985.

Warren J. Marwedel, Dennis Minichello, Tribler & Marwedel, P.C., Chicago, Ill., for plaintiff.

Barry N. Gutterman, Burlington Northern Railroad Co., Naperville, Ill., for Burlington Northern RR, and Union Pacific RR.

Daniel K. Schlorf, for NYK Lines.

## MEMORANDUM OPINION

GRADY, Chief Judge.

Plaintiff Marine Office of America brings this action as the insurer and subrogee of Gomiya (U.S.A.), Inc. ("Gomiya") to recover damages for a breach of contract which occurred when a cargo of machinery shipped by Gomiya was damaged in transit. Defendants in this case are NYK Line and its vessel, M/V HIEI MARU, the Union Pacific Railroad and the Burlington Northern Railroad. Both railroad companies have moved for summary judgment arguing that Gomiya failed to provide them with written notice of a claim for damages within nine months after the delivery of the cargo as required by the bill of lading issued by the railroads.

FACTS

The cargo at issue in this case was shipped by Gomiya Company, Ltd. in Japan to Gomiya (U.S.A.), Inc. by sea, aboard the M/V HIEI MARU, discharged in Los Angeles, and transported from Los Angeles to Chicago first by the Union Pacific Railroad and then the Burlington Northern Railroad. Upon arrival in Chicago, the cargo was

delivered to Omni Overseas Freighting, Inc., apparently as agent for Gomiya, on August 27, 1982. As the crates were being lifted from the rail cars, damage to the shipping crates was observed, and the crane operators were instructed to hold the crates in place while the Burlington Northern was notified of the damage. Affidavit of Clarence J. Calabria, ¶ 3. Joseph Calabria and Clarence Calabria of Omni telephoned the Burlington Northern and informed Betty Kastner of the damage. Kastner replied that the railroad's surveyors were unavailable to inspect the damage, and instructed Omni to photograph the damage. *Id.*, ¶¶ 4–5. Two photographs of the damaged crates were taken, and a set was hand-delivered to Kastner. *Id.*, ¶¶ 6–7.

A survey of the damage was arranged by Gomiya and took place on August 31, 1982. According to John Terada, the office manager for Gomiya, a representative of NYK Line was present. The Burlington Northern was notified of the survey and invited to attend, but apparently did not. Affidavit of John Terada, ¶¶ 2–3. A letter was sent by Terada on August 31, 1982, to NYK Line informing it of the damage to the cargo, which was apparently due to the shifting of the machinery inside the crate while in transit to Chicago. The letter indicated that the extent of the damage was not yet known, but that Gomiya intended to hold NYK Line responsible. Motion for Summary Judgment, attachment, August 31, 1982, letter from John Terada.

NYK Line apparently never transmitted a notice of claim to the Union Pacific, Affidavit of Carl D. Summerfield, and did not send written notice to the Burlington Northern until July 14, 1983. Affidavit of John C. Bilek, Jr. The defendant railroads contend that according to the terms of their bill of lading, written notice of a claim for damages must be filed within nine months of delivery of the goods:

> (b) As a condition precedent to recovery, claims must be filed in writing with the receiving or delivering carrier, or carrier issuing this bill of lading, or carrier on whose line the loss, damage, injury or delay occurred, within nine months after delivery of the property (or, in the case of export traffic, within nine months after delivery at port of export) or, in the case of failure to make delivery, then within nine months after a reasonable time for delivery has elapsed; and suits shall be instituted against any carrier only within one year when letter mailed from the day when notice in writing is mailed by the carrier to the claimant that the carrier has disallowed the claim or any part or parts thereof specified in the notice. Where claims are not filed or suits are not instituted thereon in accordance with the foregoing provisions, no carrier hereunder shall be liable, and such claims will not be paid.

Motion for Summary Judgment, attachment Union Pacific Railroad Company UP Exempt 2–A, Section 2(b), at 5–6. Because no such written notice was filed with the railroads within the specified time period, defendants argue that they are entitled to summary judgment.

*Nine-Month Written Notice to Railroads*

Plaintiff maintains that it complied with the requirements of the Intermodal Bill of Lading executed between Gomiya and NYK Line, and that it is the Intermodal Bill of Lading that governs this case. In the alternative, plaintiff argues that under the doctrine of *Hopper Paper Co. v. Baltimore & O.R. Co.*, 178 F.2d 179 (7th Cir. 1949), written notice is unnecessary where it is demonstrated that the defendant carrier had actual notice of the damage.

The Intermodal Bill of Lading is expressly designed to govern the transportation of goods by a variety of carriers. Complaint, Exh. 1, Intermodal Bill of Lading, section 1(c) (" 'Intermodal Transportation' means carriage of the Goods under this Bill of Lading from place of receipt from Merchant to place of delivery to Merchant by the Carrier plus one or more Inland Carriers."). The terms of the bill of lading are designed to accommodate the use of various subcontractors in addition to the contracting ocean carrier, and specifically provide that the "Custody and Carriage of the

Goods during Intermodal Transportation within the United States are subject to the terms of the relevant rail, motor or other Uniform Domestic Bill of Lading ... adopted by the Inland Carrier ... even though the Inland Carrier's bill of lading was not, and was not intended to be, issued covering the Goods...." Section 29(1). The Intermodal Bill of Lading is also intended to protect the shipper, who may only know the identity of the initial contracting carrier:

> (3) Claim for loss or damage against the Carrier [NYK Line] shall be given and suit commenced as provided in Article 25. Claim for loss of or damage to the Goods against a U.S. Inland Carrier [the railroads] shall be made in writing within nine months after delivery of the Goods by such Inland Carrier or, in case of failure to make delivery, then within nine months after a reasonable time for delivery has elapsed; and suits shall be instituted against a U.S. Inland Carrier only within two years and one day from the day when notice in writing is given by such Inland Carrier to the claimant that it has disallowed the claim or any part or parts thereof specified in the notice. Where claims are not filed or suits are not instituted against a U.S. Inland Carrier in accordance with the foregoing provisions, it shall not be liable for loss of or damage to the Goods. The filing of a claim under this Bill of Lading with the Carrier shall also constitute a filing of a claim with the Inland Carrier. The filing of a claim under this Bill of Lading with the Inland Carrier shall also constitute the filing of a claim with the Carrier.

Section 29(3).

■ This section obviously reiterates the nine-month notice requirement contained in the railroad bill of lading, but adds that the filing of written notice with NYK Line constitutes the filing of written notice with the Inland Carriers, in this case, the Union Pacific and Burlington Northern. This allows a shipper who may not discover the identity of the various inland carriers who transported the goods within nine months to comply with the notice requirement by filing a claim with the carrier it does know. It is undisputed that plaintiff filed written notice with NYK Line on August 31, 1982, four days after delivery of the cargo. Under the terms of the Intermodal Bill of Lading, this should be enough to satisfy the notice requirement.

The railroads complain that they should not be held to the terms of the Intermodal Bill of Lading because they were not parties to that contract. At present, we need not decide this question because we do not find their own bill of lading in conflict with the terms of the Intermodal Bill of Lading.[1] Section 2(b) of the railroad document, *see supra* at 395, requires that written claims be filed in writing with "the *receiving* or delivering carrier, *or* carrier issuing this bill of lading...." The receiving carrier in this case was NYK Line, and plaintiff filed written notice with the receiving carrier within the specified time period. We find, therefore, that Gomiya complied with the notice requirements of the Intermodal Bill of Lading, and deny the defendant railroads' motion for summary judgment.

■ Furthermore, we agree with the doctrine of *Hopper Paper Co. v. Baltimore & O.R. Co.*, and find that because the Burlington Northern had actual knowledge of the damage to plaintiff's cargo, it cannot now complain of Gomiya's failure to file written notice.[2] The railroads argue that

---

1. We do not have sufficient information to determine whether the railroads are bound by the Intermodal Bill of Lading due to their conduct, even though they do not appear as parties to that contract. For example, we do not know if the Intermodal Bill of Lading accompanied the shipment of plaintiff's goods or if it was otherwise transmitted to the railroads as part of the overall transaction. The Intermodal Bill of Lading appears to be a form contract, and we suspect it is in common use among carriers using ocean and land carriage. It is likely that some custom has developed in regard to its application to U.S. Inland Carriers, and we would be inclined, therefore, to hold that the railroads are bound by its terms.

2. There is no indication that the Union Pacific had actual knowledge of the claim, but it may be that because of the relationship between the

*Hopper* is a much criticized case that should be limited to its facts. *See Henry Pratt Co. v. Stor Dor Freight Systems, Inc.,* 416 F.Supp. 714 (N.D.Ill.1975). In *Hopper,* it was undisputed that the goods were destroyed in a crash between two of the defendant railroad's trains. The salvage from the wreck was sold by the defendant, but no accounting was ever given to the plaintiff. The defendant, therefore, was the only party with full knowledge of all of the facts surrounding the loss of the cargo, and had actual notice of everything written notice would have provided. Failure to file written notice within the required time period was therefore excused.

Defendants contend that unlike *Hopper,* it is not clear how the damage in this case occurred, and they had no knowledge of the extent of the damage or of Gomiya's intent to hold the railroads responsible. The Burlington Northern, however, was promptly notified by Gomiya's receiving agent of the apparent damage to the shipping crates before they were removed from the railcars, was given photographs of the crates, and was offered an opportunity to attend the damage survey. *See supra* at 395. Had the railroads participated in the damage survey, they would have known the full extent of the damage, and we believe that Gomiya's actions in quickly notifying the Burlington Northern of the damage and arranging a survey indicate its intent to seek compensation for its goods.

Contrary to defendants' assertion concerning the viability of the *Hopper* doctrine, the Seventh Circuit Court of Appeals expressly refrained from overruling *Hopper* in *Wisconsin Packing Co. v. Indiana Refrigerator Lines,* 618 F.2d 441, 447–48 (7th Cir.1980). The Seventh Circuit instead adopted a practical approach that examines the extent of actual knowledge in each case and whether some form of written notice was given. Under such an approach, *Hopper* represents one extreme where the ex-

tent of defendant's knowledge obviates any need for formal notice. The facts of *Wisconsin Packing* itself represent a middle ground, where the defendant knew of the damage and the plaintiff filed an arguably insufficient notice of loss within the nine-month period. The Seventh Circuit found that the combination of knowledge and informal notice in that instance was sufficient to excuse the filing of a more formal written damage claim.

In this case, there was oral notice to the Burlington Northern, a delivery of photographs, and an opportunity to survey the full extent of the damage. In addition, Gomiya filed written notice in accordance with the Intermodal Bill of Lading with NYK Line. Given this combination of oral notice, written notice and actual knowledge, we believe that Gomiya's failure to file formal written notice of loss with the railroads is not fatal to its cause of action.

*Jurisdiction Over Claim Against NYK Line*

The Intermodal Bill of Lading also provides that "In any event the Carrier shall be discharged from all liability in respect of non-delivery, misdelivery, delay, loss or damage unless suit is brought within one year after delivery of the Goods or the date when the Goods should have been delivered." Intermodal Bill of Lading, section 25. This provision is a restatement of the Carriage of Goods by Sea Act ("COGSA"), 46 U.S.C. § 1303(6), which also requires that actions for loss or damage to cargo be brought within one year of the date of delivery. The date of delivery in this case was August 27, 1982, but plaintiff's complaint was filed on March 15, 1984. Plaintiff's suit against NYK Lines is therefore apparently untimely, under both the terms of the Intermodal Bill of Lading and COGSA. In that event, we would have to dismiss the case against NYK Lines, leaving plaintiff's suit against the Union Pacific and the Burlington Northern.

two railroads, knowledge and notice to one is imputed to the other. *See,* for example, the provisions for written notice cited *supra* at 395. Again, we have insufficient information at this

time to rule on this point; however, the Union Pacific's lack of actual knowledge does not defeat plaintiff's cause of action, for the reasons we have already stated. *See supra* at 395–96.

This prospect raises the question of our jurisdiction over the case. The complaint asserts federal jurisdiction based on admiralty, 28 U.S.C. § 1333, and federal question, 28 U.S.C. § 1331. Without NYK Line, it is questionable whether admiralty jurisdiction remains. Federal question jurisdiction is based on plaintiff's allegation that the Carmack Amendment, 49 U.S.C. § 11707, governs its claims against the railroads. There is some indication, however that the Carmack Amendment does not apply to bills of lading issued for goods received for shipment at a point outside the United States, *see Kenny's Auto Parts, Inc. v. Baker*, 478 F.Supp. 461, 464 (E.D. Pa.1979), although the Carmack Amendment has recently been amended as part of the overall revision of federal transportation laws and now covers freight forwarding provided between "a place in a State and a place in another State, even if part of the transportation is outside the United States." 49 U.S.C. § 10561(a)(2)(A); *see* 49 U.S.C.A. § 11707 (West 1985 pam.); *compare* 49 U.S.C. § 20(11).

If the Carmack Amendment does not apply to this case, then our jurisdiction must rest on diversity of citizenship. We have no way of knowing at this time whether diversity jurisdiction exists, as the citizenship of the various parties has not been established.

Because none of these issues have been addressed by the parties, we will not rule at this time on the timeliness of plaintiff's suit against NYK Line or any resulting jurisdictional questions, and will instead direct the parties to submit memoranda on the issues.

CONCLUSION

The motions of defendants Union Pacific Railroad and Burlington Northern Railroad for summary judgment are denied. Plaintiff is directed to submit a memorandum addressing (1) the timeliness of its suit against NYK Line and (2) this court's jurisdiction over its claims against the railroads if its case against NYK Line is dismissed.

This memorandum should be filed by August 16, 1985. Defendants will have until August 30, 1985, to respond, after which we will take these issues under advisement.

MEMORANDUM OPINION

ON MOTION FOR RECONSIDERATION

The parties have submitted memoranda on the COGSA and jurisdictional questions raised in our opinion of July 26, 1985. In addition, defendants have moved for reconsideration of that decision.

In their motion for reconsideration, the defendant railroads reiterate their argument that they cannot be bound to the terms of the intermodal bill of lading because they are not parties to that contract. Instead, they continue to maintain that their carriage of plaintiff's goods was governed by a separate bill of lading issued by defendant Union Pacific Railroad. In answer to our query as to whether the railroads are bound by the intermodal bill of lading because of their conduct, defendants state that the intermodal bill of lading referred to by plaintiff is not in common use among carriers, did not accompany the shipment of plaintiff's goods, nor was it otherwise transmitted to the railroads. Memorandum in Support of Defendants' Motion for Reconsideration, Affid. of John C. Bilek, Jr. Nonetheless, the railroads may still be held to the terms of the intermodal bill of lading if it is determined that the intermodal bill of lading was a through bill of lading covering shipment of the goods from Shimizu, Japan, to Chicago, Illinois.

■■■ A through bill of lading governs the entire transportation of goods and applies to connecting carriers even though they are not parties to the contract. *E.W. Bowman, Inc. v. Norfolk & Western Railway Co.*, 483 F.Supp. 1322 (W.D.Pa.1980).[1] This is true regardless of whether the connecting carrier issues a new bill of lading, as the new contract is treated as void for lack of consideration. *S.C. Johnson v. Louisville & Nashville Railroad Co.*, 695

---

1. Defendants rely on *Reider v. Thompson*, 339 U.S. 113, 70 S.Ct. 499, 94 L.Ed. 698 (1950),

which is distinguishable, as the ocean bill of lading in that case only designated the port of

F.2d 253, 258 n. 3 (7th Cir.1982); *see also Mexican Light Co. v. Texas Mexican Railway Co.*, 331 U.S. 731, 67 S.Ct. 1440, 91 L.Ed. 1779 (1947). Whether a particular contract is indeed a through bill of lading is a question of fact, to be determined by examining various factors such as the final destination indicated on the document, the conduct of the shipper and the carriers, and whether the connecting carriers were compensated by the payment made to the initial carrier or by separate consideration from the shipper. *See, e.g., Johnson*, 695 F.2d at 257; *Bowman*, 483 F.Supp. at 1324; *Season-All Industries, Inc. v. Merchant Shippers*, 451 F.Supp. 727, 730 (W.D.Pa. 1978); *see also Mexican Light Co.*, 331 U.S. at 734, 67 S.Ct. at 1441; *Woodhouse, Drake & Carey v. M/V Righteous*, 710 F.2d 1523, 1526 (11th Cir.1983).

The intermodal bill of lading in this case designates Los Angeles as the "Port of Discharge," while the "Place of Delivery" is Chicago. This appears to demonstrate that the bill was a through bill; however, we have no information as to how the rail carriage was arranged or what compensation the railroads received. The bill of lading issued by Union Pacific sheds no light on this inquiry; the bill states that the shipper for the rail carriage was West Coast Traffic Services, Inc., and that the charges had been "prepaid." There is no indication whether West Coast Traffic Services was an agent of the shipper, arranging separate transportation for the goods, or a forwarding agent of the initial carrier, NYK Line, arranging connecting carriage pursuant to a through bill of lading.[2] Neither party has raised or addressed this issue concerning the nature of the intermodal bill, and clearly it is impossible to make a determination as to this fact question at this time.

However, as we stated in our earlier opinion, we need not decide whether the intermodal or the rail bill of lading governs this case in order to rule on the limitations question raised in defendants' summary judgment motion. If the railroads are subject to the terms of the intermodal bill of lading because it is a through bill, then under the terms of the intermodal bill, plaintiff's timely notice to NYK Line served as timely notice to the railroads. If the rail carriage is governed instead by the Union Pacific bill of lading, we believe that under the doctrine of *Hopper Paper Co. v. Baltimore & O.R. Co.*, 178 F.2d 179 (7th Cir.1949), plaintiff's failure to file written notice with the railroads is excused because of the informal notice provided and defendants' actual knowledge of the damage. Defendants take exception to our application of the *Hopper* doctrine, and continue to press their argument that *Hopper* is to be limited to its facts. *Henry Pratt Co. v. Stor Dor Freight Systems, Inc.*, 416 F.Supp. 714 (N.D.Ill.1975). As we have already noted, the Seventh Circuit Court of Appeals has had occasion to rule on the *Hopper* doctrine since the *Henry Pratt* decision, and rather than abandoning *Hopper*, chose to adopt an approach that evaluates the extent of actual knowledge in each case and whether some form of notice was given. *Wisconsin Packing Co. v. Indiana Refrigerator Lines*, 618 F.2d 441, 447–78 (7th Cir.1980). Following the analysis set forth in *Wisconsin Packing*, we believe the oral notice, written notice and actual knowledge present in this case are sufficient to excuse the filing of a formal written claim with the railroads.

■ As for our question concerning the one year statute of limitations under COG-

---

discharge and left the location for the destination of the goods blank. *Id.*, at 116, 70 S.Ct. at 501. The ocean bill of lading was therefore not a through bill of lading, and the ocean carriage and rail carriage were covered by two distinct contracts.

2. In its complaint, plaintiff does allege in Count I that NYK Line "arranged to have the cargo moved by land to the order of the holders" of the intermodal bill of lading, Complaint, ¶ 8,

which seems to indicate that West Coast Traffic Services acted as an agent of NYK Line and that the intermodal bill of lading was a through bill. However, plaintiff also alleges in Count II that defendant Union Pacific Railroad was the originating carrier of the goods pursuant to the bill of lading it issued for the rail carriage, which implies that the intermodal bill of lading may not have been a through bill.

SA, plaintiff has pointed out that a carrier may waive the limitation, and that defendant NYK Line therefore is not barred,[3] and we need not address further any jurisdictional issues.[4]

CONCLUSION

Defendants' motion to reconsider our opinion of July 26, 1985, is denied. A status hearing is set for December 3, 1985, at 9:30 a.m.

3. Defendant railroads protest that this waiver is further indication of the inequities in applying the terms of the intermodal bill of lading to the rail carriage, since the Union Pacific bill of lading also contains a one year limitation on suits. However, unlike the COGSA limitation, which commences on the date of delivery of the goods, the rail limitation does not begin to run until the day the rail carrier mails a letter disallowing a claim against it. *Compare*, Intermodal Bill of Lading, section 25, *with* Union Pacific Railroad Company UP Exempt 2-A, Section 2(b), at 5-6. Because there is no indication that the railroads sent plaintiff such a letter prior to March 15, 1983, one year before the day this suit was filed, the waiver by NYK Line did not compromise the railroads' limitation.

4. Although it is unnecessary now to determine the applicability of the Carmack Amendment, we are not persuaded by the argument that the Amendment clearly governs this case. Both sides cite *Reider v. Thompson, supra,* for the proposition that the scope of the Carmack Amendment is not limited by the fact that a shipment originated outside the United States, but that a determination must be made as to where the obligation of the carrier as receiving carrier began. *Reider,* 339 U.S. at 117, 70 S.Ct. at 501. As we have already noted, however, the bill of lading in *Reider* was not a through bill, and the *Reider* Court itself indicated that the Carmack Amendment may not apply to a through bill issued in a foreign country. *Id.,* at 118, 70 S.Ct. at 502; *see also Auerbach International Sales, Ltd. v. Consolidated Rail Corp.,* No. 77 Civ. 2519, slip op. at n. 2 and cases cited therein (S.D.N.Y. April 27, 1979) (Gagliardi, J.). Therefore, if the intermodal bill of lading was a through bill of lading, the Carmack Amendment may not apply. Also, given our alternative bases for denying defendants' motion for summary judgment, we need not decide now the ramifications of defendants' statement that the rail carriage in this case was exempt from regulation, pursuant to 49 U.S.C. § 10101a.